**Martha L. MEYER, Respondent-Appellant,**

v.

**Fred N. MEYER, Appellant-Respondent.**

**No. KCD26071.**

Missouri Court of Appeals,
Kansas City District.

March 5, 1973.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1973.

mitted as a disputed issue, the defendants will be permitted to converse that issue separately.

Kusnetzky & Partin, William C. Partin, Kansas City, for respondent-appellant.

Allan R. Browne, Ennis, Browne, Martin & Tapp, Kansas City, for appellant-respondent.

Before DIXON, C. J., and SWOFFORD and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Under a 1964 decree of divorce, custody of four children born of the marriage was awarded to the mother, and as modified on July 19, 1967, the father was ordered to pay child support for all four children in a single sum of $260.00 per month. The questions in this case are whether the father is entitled to credit for support which he has afforded directly to some of the children during past periods when those children lived with him, and what change if any should be made prospectively in the support award because of changed circumstances.

One of the children, David, has lived at all times with his mother and lives with her now. Allen, the youngest child, has lived with the father since June, 1969, and still lives with him. Frederick, the oldest child, began living with the father on May 17, 1970; he attended college at the father's expense in the Fall of 1970 and during the Spring and Fall of 1971; and at the time of hearing he had terminated his college studies, had taken a full time job, was self-supporting, and was living in an apartment of his own.

The fourth child is a daughter, Pamela. She lived with her father from August, 1968 until August, 1969, and then returned to live with her mother. She married in July 1970, and became divorced September 20, 1971, while pregnant.

During the entire period after the decree modification in July, 1967, and to the date of hearing in January, 1972, the husband made monthly remittances to the mother by check, with a written notation on each check showing the month's support covered. In each month in which he had the custody of one or more children, he deducted a proportionate amount of the $260.00 child support called for under the decree. So, for example, if he had two of the children in a particular month, his check for that month would be for one-half of the total monthly child support.

These checks were all received and cashed by the mother without objection.

The first protest registered by the mother was in November, 1971, when the mother asked the father for a contribution to the support of Pamela. Then, in January, 1972 (this perhaps by coincidence being the same month in which the husband remarried), she filed execution and garnishment to collect the full amount of the child support as awarded by the court decree in 1967, giving no credit to the husband whatsoever. The husband countered with two motions. The first of these was a motion to require credit on the judgment and to quash garnishment and execution. The second motion was to modify the judgment for future support and maintenance.

At the hearing of these motions, the husband appeared and testified. The mother, although personally present, did not testify and offered no evidence. As a result of the hearing, the trial court quashed the execution because of uncertainty as to the amount claimed; it overruled the husband's claim for credit for the support rendered by him direct to the children, but ordered credit of $1,365.00 which had been voluntarily agreed by the wife; it changed the custody of Allen to the father; and it substituted $75.00 per month for the support of David in place of the previous award of $260.00 per month for all minor children, specifically providing that no support award was being made as to Pamela or Frederick.

The husband appeals from that portion of the court's order which denied him credit for support given by him directly to the children during those periods when they resided with him, or were emancipated. The wife appeals from those portions of the order which denied future support for Pamela and which set the award to David at only $75.00 per month.

I

With respect to the question of whether the father is entitled to credit for

support given directly to the children absent a formal modificaiton of the decree, there is some conflict in the cases throughout the country. The usual rule is that a father may not provide child support other than by the payment to the wife ordered by the court, unless and until he obtains a modification of the decree by the court. This rule extends to the point that where a decree orders a single periodic payment to cover two or more children, the father may not deduct a proportionate amount for one of those children upon his or her attaining emancipation, until he obtains the court modification. Gordon v. Ary, Mo.App., 358 S.W.2d 81.

However, most jurisdictions, including Missouri, allow exceptions under appropriate circumstances and hold that credit should be given to the father when dictated by equitable considerations. In circumstances where it is found that the mother agreed either expressly or impliedly to the husband making his contribution directly to or in behalf of the child, credits have been permitted, even though not formalized by court order. These general rules are stated in the following authorities: "Right to credit on accrued support payments for time child is in father's custody or for other voluntary expenditures", 2 A.L.R.2d 831; 27B C.J.S. Divorce § 321(1) b, p. 636; 24 Am.Jur.2d, Divorce and Separation, § 872, p. 992; 22 Mo.L.Rev. 94.

The Missouri rule on the subject is stated in the leading case Steckler v. Steckler, Mo.App., 293 S.W.2d 129, l.c. 134. The Springfield Court of Appeals in that case recognized the conflict in authority on the subject under discussion, but chose to follow the line of cases holding "that where 'compulsion of circumstances' makes necessary the direct expenditures by the husband, equitable considerations will require credit for such expenditures 'which constitute a substantial compliance with the spirit and intent of the decree.'" In discussing this line of authority, the Springfield Court of Appeals said:

"As to the latter group of cases, those which hold the court has basic jurisdiction to credit arrears when equitable principles demand it, the annotators are reluctant to draw and state any general rule as to when such credit may be allowed. However, it is to be observed that a great majority of them can be grouped under one umbrella, namely, the express or implied consent of the mother, who occupies the position of parent-trustee, to the payment of support money in manner other than directly to her."

The rule so adopted in the Steckler case was thereafter followed and applied in M_____ v. M_____, Mo.App., 313 S.W.2d 209, l.c. 213, where a father had paid support money directly to the paternal grandparents who had actual custody of the children. The court found on conflicting testimony that the mother had agreed that the support payments were to be so made. In holding that the father was entitled to credit for payments made to the grandparents, the St. Louis Court of Appeals said:

"Plaintiff's position seems to be that since the judgment was in her favor, it could be satisfied only by paying the amounts due thereunder to her regardless of who had the actual custody of the children.

"Where the father is entitled to credit on the arrears of a child support judgment for payments made on behalf of the child depends on the circumstances under which the payments are made." "[U]nder certain factual situations the

*   *   *   *   *   *

mother may not collect the amount that has accrued on a judgment for support. 27 C.J.S. Divorce § 321(b), p. 1228, considers and deals with the general question in this language: 'Where an order required a divorced husband to make periodical payments for the support of a child, and the husband had the custody of and supported the child for several

years, the wife could not recover payments for support during that period, . . .'"

This same rule has been reiterated more recently in Stemme v. Stemme, Mo.App., 351 S.W.2d 823, l.c. 825, and in Webb v. Webb, Mo.App., 475 S.W.2d 134, l.c. 135.

If, therefore, the mother in this case agreed to the treatment of support as handled by the father, then under the authorities cited, the father is entitled to the credit which he claims.

In considering the evidence bearing on this issue, the most compelling factor is that the father followed a consistent pattern of deductions in which the mother acquiesced without any dissent for a period of years. From this long continued practice of the parties, the inference is irresistable that the mother impliedly agreed to the father taking pro rata credit for those of the children who lived with him from time to time or who became emancipated. This inference is strongly buttressed by the express statement by the mother's counsel at the trial that "Allen is in the custody of his father by agreement of the parties". From this concession it is only a short step to infer that it was also by agreement of the parties, or at least with the consent of the mother, that Frederick and Pamela each spend extended periods in the custody of the father. This understanding of the situation is further supported by the fact that the mother although present in court saw fit to offer no testimony. It must be assumed that if there were any element of unfair coercion or lack of free consent on her part with respect to the change of custody of the children and the taking of credit for support by the father during those periods of custody, that she would have taken the stand in order to so testify.

Accordingly, we hold that the father is entitled to credit for the support supplied by him direct to the children with the implied consent of the mother. This results in the elimination of the alleged arrearage.

II

The marriage of Pamela in July, 1970 resulted in her emancipation and operated to terminate the father's obligation of support, even though no action was taken by him for a modification of the decree. 27B C.J.S. Divorce § 323b. The father was unquestionably entitled at that point to apply to the court for a modification of the decree, insofar as the award of support included any element of contribution for this married daughter. Hayes v. Hayes, Mo.App., 156 S.W.2d 34.

However, the mother contests the right of the father to cast off legal responsibility for Pamela, basing her argument on the fact that Pamela was divorced after the marriage and prior to the father's motion for a reduction in the support award. The mother argues in effect that the emancipation was only temporary in nature and could not last beyond the termination of the marriage by divorce, so that the burden of support was again thrown upon the father. No authority directly in point is cited for this proposition by the mother. The closest authority found on this subject is Rinaldi v. Rinaldi, 94 N.J.Eq. 14, 118 A. 685, l.c. 688, which is contrary to the mother's position. The court there said:

"Even when an infant, emancipated by marriage, becomes a widow before reaching the age of majority, she does not relapse into pupilage. 22 Cyc. 518. Pupil; inter alia one who has not reached his or her majority. Bouvier's Law Dict. (Rawle's Rev.) vol. 2, p. 796."

Aside from authority, and strictly upon principle, there is good reason why the burden of support should not be reimposed upon the father. His daughter voluntarily chose a completely new and different family relationship when she took the marriage vows. At that time, her husband assumed legal responsibility for any support which she or any child of the marriage might require. This obligation took the place of and supplanted Pamela's former right to

look to her father for necessary support. The divorce did not necessarily terminate the legal obligation by her new husband, and indeed there is no showing on the present record that she did not receive some provision by way of alimony or support for her unborn child. We hold that the divorce did not undo the emancipation which had been accomplished by Pamela's marriage.

This is not to say that the father may not under some circumstances be called upon to render further support to Pamela. (We note incidentally that Pamela lived with her father from the last of August or September, 1970 until January, 1971, and the father expressed a willingness to welcome Pamela again into his home if she desired to come.) However, if he is to be called upon to meet such an obligation, it will be one imposed by general law outside the scope of the old divorce decree between himself and his former wife. The adjudication of any obligation to render support to his emancipated daughter would be something outside the jurisdiction of the original divorce court and would involve additional considerations, possibly calling for a balancing of obligations between the father and Pamela's divorced husband. See State v. Carroll, Mo.App., 309 S.W.2d 654.

### III

■ The final issue for consideration is the amount of support awarded for David. No evidence was submitted by anybody at the hearing held in January, 1972, with respect to David's needs or the estimated cost of fulfilling those needs.[1] In this Court, the mother attempts to attack the award of $75.00 per month primarily on the basis of comparing this amount with the amount granted as child support in other reported cases, with some reference by her also to a 1965 suggested "Family Support Chart"; while the father in like man-

ner seeks to support the award by reference to other past court decisions. This resort by the parties to legal precedent and statistical charts is an unacceptable substitute for direct evidence concerning the specific child whose welfare is now under consideration. As the father states in his brief: "Each case, because of the endless variety of human situations, depends on its own facts." What the mother states in her brief is equally true: "the information which the court would normally require to make a determination of a proper amount of child support cannot be found in the record." In the absence of evidence as to the situation and needs of this boy, the case must be remanded for additional hearing.

■ The mother argues that the burden of proof was on the father to prove a change of circumstances and the new situation, and that absent such evidence she suggests that the ruling should be against him. However, the father has shown abundant changes in the family situation since 1967 to demonstrate that some modification in the support award is in order. Were this a matter simply between the father and mother, with the decision predicated solely upon strict legal rules of procedure and burden of proof, there would be merit in the husband's counter-argument that the ruling on appeal should go against the mother since she is the one who is challenging the trial court's exercise of discretion. However, much more is involved than a contest in forensic skill between the parents. The real party in interest is the child, and it is his well-being which must be the focus of concern. The safeguarding of his interests requires a more complete development of the facts.

The judgment is reversed and the cause is remanded with the following instructions: (1) the father is to be given credit for the full amount of the arrearage claimed by the mother; (2) no award is to

---

1. Apparently the trial court arrived at the new support figure for David by dividing the old $260.00 figure by four and rounding out the quotient to $75.00.

be made for the support by the father of any of the children except David; and (3) a further hearing is to be held to determine the appropriate award to be made for the support of David.

Costs will be divided equally between the parties.

All concur.