In Re the MARRIAGE OF Kathern (Hendricks) BALLARD, Respondent,

v.

James L. HENDRICKS, Appellant.

No. WD 48289.

Missouri Court of Appeals, Western District.

June 7, 1994.

F.A. White, Jr., Kansas City, for appellant.

Don Witt, Platte City, for respondent.

Before LOWENSTEIN, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

Appellant appeals from adverse order of the Circuit Court finding him in contempt of court for failure to pay a child support arrearage of $13,950, and further ordering him to pay support for his son, Kyle, in the sum of $387 per month from July 1, 1993.

The parties' marriage was dissolved in Platte County on July 9, 1979. Kyle Thomas Hendricks was the only child born to the marriage. The court ordered appellant to pay respondent $200 per month child support and awarded custody to respondent. The child support was to commence on July 15, 1979.

Appellant's sole point on appeal alleges that the trial court erred in finding him in contempt for failure to pay child support in the sum of $13,950.

In this court tried case we are guided by *Murphy v. Carron,* 536 S.W.2d 30, 31 (Mo. banc 1976). The trial court judgment will be sustained unless it is against the weight of the evidence, there is no substantial evidence to support it or the law has been erroneously applied or declared. *Id.*

The custody of Kyle Thomas Hendricks, son of appellant and respondent, was awarded to respondent in the dissolution decree entered on July 9, 1979, and pursuant to the amended decree entered August 3, 1979. Pursuant to the amended decree, appellant was ordered to pay $200 per month child support. At the time of the dissolution, Kyle was sixteen months of age.

The legal file contains a docket sheet, but unfortunately, it does not set out and explain the various pleadings from August 8, 1979, through December 29, 1992. It appears from the docket sheets that on November 13, 1980, the parties stipulated to an increase of child support to $225 per month to commence November 15, 1980, payable through the circuit clerk's office. Also included in this order was the award of specific visitation to include "alternate week-ends and holidays, one week during the month of June and one week during the month of August." As gleaned from the docket sheets the "... appellant's obligation for child support payments is abated" pursuant to an entry on

August 18, 1982. On October 6, 1982, the court modified the original decree in dissolution ordering appellant to pay child support in the sum of $112.50 per month for Kyle. On December 30, 1992, respondent filed a motion to modify the dissolution decree as to child support and a motion for contempt.

Appellant filed his answer to the contempt motion and his answer to the motion to modify and cross motion to modify on February 4, 1993. Appellant alleges that Kyle has been in the custody of Mr. and Mrs. Delbert Weese, maternal grandparents, for about ten years. Appellant testified he paid child support as ordered, until Kyle went to live with his grandparents. At that time, he ceased making child support payments to respondent.

Kyle lived with the Weeses for many years and they were granted guardianship of Kyle by the Platte County probate court. Eventually, respondent remarried and Kyle went to live with her. Appellant acknowledges his present obligation to pay child support.

Respondent testified that she and Kyle lived with her parents, Mr. and Mrs. Weese, for approximately five years. She lived with Gary Moore from about late 1983 until May of 1985. She had become pregnant by Moore and testified that she had to live with him until her son was born in April of 1984. During the time she was with Moore, Kyle remained in the custody of the Weeses. Respondent testified, from 1986 until 1992, she was employed by TWA and lived in a ranch type apartment in Trimble. Kyle lived with the Weeses during this period. Neither Respondent nor appellant contributed to Kyle's support while he was living with Mr. and Mrs. Weese.

Mr. Weese testified that Kyle lived with him and his wife for about ten years and that during this time respondent would be "in and out," but she did not reside with them on any type of permanent basis. Weese stated he did not ask for support. He testified, "He [appellant] and I agreed with her [respondent's] attorney and different ones. I didn't want anything. All I wanted was a happy

life for me and my wife and that baby; that's all I cared about."

Mr. Weese and his wife executed Exhibit D which purported to excuse appellant from paying child support for Kyle.[1] Mr. Weese explained securing Exhibit D as follows:

\* \* \* \* \* \*

A. Well, I just wanted to see the fightin' and goin' to court, and battles over. I wanted to see it all come to a stop. And I went and talked to Larry Enkelmann and he seemed to think that if I had guardianship of Kyle it was up between me and Jimmy to drop it, if I wanted to.

He said, "That would be up to you." He assumed. But he also told me that I would probably have to come over here at Platte City and that I would have a hearing. And he said then bring it up with The Judge, at that time.

I waited and there was never a hearing. I received the papers signed and sealed and everything was taken care of.

And I called then and asked again. Judge, I don't remember who the Judge was or anything. I called and asked again and he said practically the same thing.

Q. And you talked with Mr. Hendricks about the fact that you did not want any child support from him?

A. That's right. I do not want anything. All I told both kids was that they could come and see him anytime they wanted to.

Q. Had you talked to your daughter about the fact that she would not have to pay any child support for Kyle?

A. There was never any mention of that.

Q. Did she support Kyle while he was with you and your wife all those years?

A. As support, no. I wouldn't say support.

Q. Did she give you money to raise Kyle?

A. No, not money.

Q. Nor did Mr. Hendricks?

A. No.

Q. And that was with your and your wife's agreement; is that correct?

A. Yes.

1. The parties have not honored us with a copy of Exhibit D.

Q. And during the years that you had Kyle, were you able to financially support him?

A. Yes, sir.

Q. Did you indicate to Mr. Hendricks that you had money and you did not need to worry about—he did not need to worry about Kyle being taken care of?

A. I don't know about money, but I had sufficient enough to take care of me and him and his grandmother.

Q. And you did for those years; is that correct?

A. Yes, I did.

.      .      .      .      .

Weese further stated:

.      .      .      .      .

Q. During the time that you had custody of Kyle, Mr. Weese, did Jim Hendricks do anything to lead you to conclude he had abandoned his son?

A. No, sir.

Q. Did he talk to you frequently about Kyle and visit with Kyle?

A. Yes, we saw one another at work.

Q. Would he buy Kyle presents and clothes from time to time during—

A. Yes, he would.

Q. And would your daughter, also?

A. I suppose they both did somewhat. Jimmy did quite a bit.

.      .      .      .      .

Appellant testified he paid his child support as ordered until Kyle went to live with the Weeses and they executed Exhibit D. Appellant and respondent had no communication about the child support until December of 1992, when he received notice he was allegedly $16,000 in arrears on his child support. Appellant testified this was the first indication he had that Kyle was no longer with the Weeses. In fact, Kyle had been removed from the Weeses to his mother's in August of 1992 and the move was believed temporary.

Appellant contends that the trial court erred in finding him in contempt of court, and in ordering him to pay $13,950 to respondent as back child support. Faulting the trial court for failing to consider equitable principles, appellant first insists on entitlement to credit for the back child support based on an agreement with respondent. In support of his first theory, appellant asserts that respondent explicitly agreed to allow Kyle to live with his grandparents who provided his support for nearly ten years. He further maintains that respondent knew about and acquiesced to the agreement with the Weeses allowing them guardianship and releasing him from child support payments.

▆▆▆  Ordinarily, the parent who is obligated to pay child support must strictly comply with the dissolution decree, or must seek a court-ordered modification if changed circumstances occur. The accrued and unpaid installments of child support obligations become judgments in favor of the custodial parent. *Stemme v. Stemme,* 351 S.W.2d 823, 825 (Mo.App.1961). The custodial parent determines how support payments are spent; the obligated parent has no right to alter the terms of the decree and to dictate the method of furnishing support. *Weaks v. Weaks,* 821 S.W.2d 503, 507 (Mo. banc 1991). Nevertheless, courts resort to equitable considerations when the compulsion of the circumstances requires non-conforming payments. *Meyer v. Meyer,* 493 S.W.2d 42, 45 (Mo.App. 1973); *M--- v. M---,* 313 S.W.2d 209, 213 (Mo.App.1958). Under appropriate circumstances, the obligated parent may be entitled to credit when the nonconforming support payments represent substantial compliance with the terms of the decree. See *Meyer,* 493 S.W.2d at 45. Credit is allowed when the compulsion of the circumstances so requires and only when the custodial parent expressly or impliedly consents to the nonconforming payments. *See id.* Compulsion of the circumstances arises when the custodial parent abandons the child or agrees to a change in custody. *Stemme,* 351 S.W.2d at 825–26. The additional requirement of consent to the nonconforming payments is appropriate because the custodial parent, who is entrusted with the duty and the right to determine how support payments are spent, may direct an alternative method of payment. *See Steckler v. Steckler,* 293 S.W.2d 129, 134 (Mo.App.1956).

The equitable doctrine allowing the obligated parent credit against arrearages in child support collection proceedings is applied on a case by case basis. Consequently, diverse results occur, as the following examples illustrate. First, *M* —, 313 S.W.2d at 214, affirmed the allowance of credit for the father's support payments to the children's grandparents. There, the mother had voluntarily surrendered custody of the children to the paternal grandparents, and allowed the father to make the support payments to the grandparents. *Id.* at 213. The *M* — court found substantial compliance with the decree because the father had discharged his obligation and the children had received the benefits of the payments to the grandparents. *Id.* at 214. Second, *Stemme*, 351 S.W.2d at 825–26, reversed the allowance of credit for payments the father made directly to the children because of no showing of either consent by the mother or compulsion of the circumstances. Third, *Weaks*, 821 S.W.2d at 507, reversed the denial of credit to the father for support payments made from his social security disability account to the mother. The *Weaks* court reasoned that the change in the entity making the support payments did not interfere with the mother's right to spend those payments. *Id.*

Here, appellant makes no showing of entitlement to credit under the recognized doctrine of substantial compliance. Appellant admittedly paid nothing for Kyle's support for nearly ten years while Kyle was in the Weeses' custody. Allowance of credit depends on the obligated parent's substantial compliance with the decree by providing care or payment. Further, on the matters of compulsion of the circumstances and consent by respondent, the parties presented conflicting evidence. We defer to trial court's authority to determine credibility and to reconcile conflicting evidence. Accordingly, we find no basis for equitable intervention on the theory that appellant was entitled to credit for the unpaid child support for substantial compliance.

As an alternative theory, appellant urges us to extend equitable principles to release him from his unpaid support obligations, for the time the Weeses had custody of and supported Kyle. Offering legal support, appellant cites *M* —, 313 S.W.2d at 213, in which the court stated that, in certain situations, the mother could not recover back child support for the period that the father had custody and supported the child, or *for the period that third persons were supporting the child.* Appellant stresses that the purpose of a child support award is to benefit the minor child, not the custodial parent. He notes that neither he nor respondent paid for Kyle's support while the Weeses had custody. Appellant suggests that payment of back child support to respondent would constitute a windfall to her.

This case presents the unique circumstances where the custodial parent seeks back child support from the obligated parent for the time a third party voluntarily supported the child. Although the *M* — case supports appellant's alternative theory, neither that case nor any other Missouri case addresses the unique circumstances presented here. Our research has revealed numerous cases from other jurisdictions involving claims for child support arrearages when the grandparents supported the children and when the divorced parents failed to meet their court-ordered obligations. Courts releasing the obligated parent from accrued child support payments focus primarily on whether the child has received adequate support and on whether award of back support would represent unjust enrichment to the custodial parent; other considerations include whether the grandparents expected remuneration, whether the parents allowed the grandparents to have custody, and whether either parent provided any care or support. *E.g., Campbell v. Campbell,* 209 Ky. 571, 273 S.W. 26, 27 (1925); *Silkworth v. Silkworth,* 255 A.D. 226, 7 N.Y.S.2d 369, 370–71 (1938).

We find that the equities of the circumstances presented here demand that appellant be released from payment of the back child support. The uncontroverted evidence shows that the Weeses provided Kyle with a stable home and with more than adequate care and support for nearly ten years. The Weeses obtained guardianship of Kyle, and released both parents from their duties of providing care and support. Both parents

recognized the Weeses' custody of Kyle. During that time, appellant maintained contact with Kyle, visiting him, taking him on trips, buying him clothing and gifts. Appellant did not make child support payments to respondent while the Weeses had custody because he relied on his written release from the Weeses. Nevertheless, appellant recognized his duty to resume child support payments to respondent when Kyle returned to her custody. On the other hand, respondent's contact with Kyle was sporadic, although she did visit him and buy him some gifts. Respondent paid the Weeses nothing toward Kyle's support, and made little effort to provide him with care. Respondent waited over nine years before seeking to enforce payment of the back child support. Under these circumstances, respondent should not be allowed to recover child support payments for care and support she never provided. Such an allowance would represent unjust and inequitable enrichment to respondent.

We accordingly reverse the portions of the judgment holding appellant in contempt of the previous modification decree and ordering him to pay $13,950 in back child support; we affirm the judgment in all other respects.

All concur.