**Stacey Renee (Block) MEYER, Appellant,**

v.

**Travis Len BLOCK, Respondent.**

**No. WD 62256.**

Missouri Court of Appeals, Western District.

Dec. 30, 2003.

John T. Kay, California, for Appellant.

Sara C. Michael, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Judge.

Stacey Meyer (Mother) appeals the modification judgment rendered in favor of Respondent Travis Block (Father) with regard to his motion to modify child custody, visitation, and support. We hold that the trial court erred in shifting legal custody from joint custody to sole custody by Father and in finding that Father did not owe a child support arrearage. We reverse and remand on those issues, but affirm the judgment below in all other respects.

### FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were granted a judgment dissolving their marriage on December 23, 1998. Although the parties recite that the dissolution court awarded joint legal custody, our review of the original decree reveals that "custody and control" of the minor child was given to mother. While the parties agreed in their separation agreement that they would share joint legal custody, that provision was not included in the decree.

Mother was awarded physical custody, and Father was granted reasonable visitation. Father was also ordered to pay child support in the amount of $400.00 [1] per month, in addition to half of the daughter's health care costs that were not covered by insurance. Mother was directed to maintain insurance for the child and to pay for the remaining half of any health care expenses that were not paid for by insurance. Mother was also given sole responsibility for providing for the child's daycare expenses.

Shortly after the entry of the judgment of dissolution, the parties changed the visitation schedule by mutual agreement. The original visitation schedule provided that Father would have visitation with the child each week from 4:00 p.m. Wednesday until 7:00 am the following morning, and every other week from 6:30 p.m. Friday until 6:30 p.m. Sunday. About a month after the dissolution, Father was allowed to have the child each week from Wednesday afternoon to noon on Saturday, as it was more convenient for the parties. As a result of this change, Father's overnights with the child increased from 104 to 156 nights.

Following the dissolution, Mother experienced a series of financial difficulties. While Mother was awarded the marital home in the dissolution, she was financially unable to maintain the mortgage payments on the residence. Her financial difficulties resulted in her filing bankruptcy in 2000. After moving through a series of rental residences, Mother moved in with her parents, where she was living at the time of the modification hearing. At various points, Mother fell behind in paying the child's daycare expenses. Father paid those expenses on the child's behalf, though he also partially withheld child support payments. Ultimately, Father paid the child's daycare expenses from January 2002 through at least October 2002.

Mother experienced other difficulties following the dissolution. Mother admitted herself for psychiatric treatment for depression in April 2000. She left her employment with the state around that time and was unemployed for seven or eight months. While there was no evidence that Mother's depression presented any danger to the child, there was some evidence at trial that Mother's financial and personal problems were having an adverse effect on her daughter's emotional well-being.

On February 22, 2002, Father filed a motion to modify the terms of the original decree of dissolution, seeking to change the child custody and support provisions within the original judgment. Specifically, Father asked that the court grant him sole legal custody of the child, with the parties sharing joint physical custody. Father also sought a change in the visitation schedule to conform to the informal visitation schedule that had been followed by the parties, plus additional time on Saturdays. Father indicated his willingness to the entry of an order making him solely responsible for the child's health insurance, health care, and daycare/education expenses. Lastly, he asked that the trial

---

1. According to the Form 14 adopted by the dissolution court, Father's presumed child support amount was $448.00. The parties apparently agreed to a reduced child support amount, based upon the separation agreement attached to the dissolution judgment. We note, in passing, that the dissolution court did not find that that presumed child support amount was rebutted as unjust or inappropriate. Instead, after ordering Father to pay $400.00 per month, the dissolution court found "that the child support amount is not consistent with Rule 88.01, Form 14." That irregularity, however, is not at issue in the present matter.

court not enter any child support order, save directing each party to be responsible for food or clothing for the child while she was in that party's care.

Mother filed a cross-claim seeking modification of child support. She also sought a judgment of contempt against Father for nonpayment of child support, based upon his withholding of child support payments during the period he was making payments to the child's daycare provider.

In its judgment, the trial court found that there had been a substantial and continuing change of circumstances for the following reasons:

(a) The parties had entered into an informal agreement changing the visitation schedule from that provided in the original decree

(b) Mother's present financial circumstances rendered her "unable to insure a secure and stable home environment for the minor child free of threat of financial ruin."

(c) Mother had failed to consult with Father regarding the health, education and welfare of the child. Specifically, Mother had failed to discuss with Father his proposal to change daycare provider as well as the child's schooling options.

(d) Mother had failed to maintain health insurance for the child, resulting in Father having to pay a $102.00 doctor bill.

(e) Father had been forced to pay the child's daycare expenses from January 2002 through October 2002.

Finding changed circumstances, the trial court modified the custody, visitation, and support provisions of the original dissolution decree, granting essentially all the relief sought by Father. The major modifications were as follows:

(1) Sole legal custody of the parties' daughter was awarded to Father, with the parents sharing joint physical custody.

(2) Mother was awarded visitation, on alternating weeks, from 4:00pm on Saturday or from 10:00am on Sunday until 4:00pm Wednesday.[2]

(3) Mother was found to have a presumed child support amount of $241.00 per month, which the court found was rebutted as unjust and inappropriate. It ordered that each party provide for the food and clothing expenses incurred by the child when she was in that party's custody and that neither party pay child support to the other.

(4) Father was ordered to provide health insurance for the child as well as pay all uninsured medical, dental, or related expenses.

(5) Father was ordered to pay the child's daycare and parochial school expenses.

(6) Father was found to have no support arrearage, based upon his payments of the child's daycare expenses from 01/2002 until the date of the modification judgment.

Mother now appeals the trial court's judgment.

## STANDARD OF REVIEW

■ Our standard of review in regard to an appeal of a judgment modifying child custody is akin to any other bench-tried case, and we proceed under the standard contained in *Murphy v. Carron*, 536

---

2. Courts and practitioners are again reminded that the concept of "visitation" is inconsistent with the concept of joint physical custo-

dy. *See Loumiet v. Loumiet*, 103 S.W.3d 332, 341 n. 5 (Mo.App.2003).

S.W.2d 30, 32 (Mo. banc 1976). *Brethorst v. Brethorst,* 50 S.W.3d 864, 866 (Mo.App. 2001). We will affirm the judgment below unless it is not supported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. *Murphy,* 536 S.W.2d at 32.

▇▇▇ Because of the trial court's superior vantage in viewing the evidence and live testimony, we show deference to its determinations, viewing the evidence and the reasonable inferences that may be drawn therefrom in the light most favorable to the court's judgment. *See Dixon v. Dixon,* 62 S.W.3d 589, 592 (Mo.App.2001). Contrary evidence is disregarded. *Brethorst,* 50 S.W.3d at 866. That deference is even greater in child custody matters, where we presume that the trial court has acted in the child's best interests. *See Dixon,* 62 S.W.3d at 592. We will typically affirm the judgment on appeal, unless we are "firmly convinced that the [child's] welfare requires some other disposition." *Id.*

## DISCUSSION

### I. Finding of Changed Circumstances

In the first of six points on appeal, Mother contends that the trial court's findings of changed circumstances were not supported by substantial evidence and were against the weight of the evidence.

▇▇▇ Following an original custody adjudication, a presumption arises that the custodial parent remains suitable to retain custody. *Humphrey v. Humphrey,* 888 S.W.2d 342, 345 (Mo.App.1994). Therefore, to prevail upon a motion to modify child custody, the movant bears the burden to show evidence that (1) a change of circumstances has occurred regarding the child or the child's custodian and (2) that

modification of the custody terms of the original decree is necessary to serve the child's best interests. *See Sumnicht v. Sackman,* 906 S.W.2d 725, 726 (Mo.App. 1995). Not every change of circumstances justifies modification of custody. Instead, the changed circumstances must be significant enough that the child would benefit from a change of custody and that such a change is necessary for the child's welfare. *Smith v. Smith,* 75 S.W.3d 815, 827 (Mo. App.2002).

### Changes in the Visitation Schedule

The evidence was undisputed that the parties had voluntarily agreed on a different visitation schedule than that ordered in the decree. Father contends that this constituted a substantial change of circumstances regarding the child's visitation since the dissolution, and that this justified modifying the visitation schedule to conform with that agreement. Mother contends that this agreement cannot constitute a change of circumstances unless the evidence shows it resulted from a unilateral action by her contrary to the custody order. We disagree. On hearing a motion to modify, the court must consider claimed changes of circumstances in light of the last order (in this case the dissolution decree). *See Weaver v. Kelling,* 53 S.W.3d 610, 613 (Mo.App.2001). For nearly four years after the dissolution, the parties had, by agreement, substantially changed the time the child spent with each parent. In fact, Mother agreed at the modification hearing that the informal agreement by the parties should continue as being in the child's best interests and that she really did not have any problem with Father having more Saturdays.[3] Mother cites us to no authority that a change of circum-

---

3. The change from the unconfirmed agreement made by the modification order was to grant Father Saturday nights every other week. Otherwise the division of parenting time was virtually identical to that practiced by the parties for nearly four years.

stances must result from some unilateral act or misconduct by the primary custodian. Moreover, the law is clear that a change in circumstances of the child as well as the custodian can support a modification. We believe that a change in the amount of time the child spends with Father by fifty percent from that provided in the original decree is certainly sufficient. Finally, we have difficulty discerning Mother's real complaint on this issue. Besides acquiescing in the parenting time arrangement for four years, she indicated at trial that she thought the additional time was good for the child and really had no objection to Father having more Saturday nights. In effect, the argument by her counsel on appeal seems to be that the court should have left the distribution of parenting time as it was in the original decree even though Mother wanted the "new" arrangement to continue. We infer, however, although not expressly articulated, that Mother's objections deal not with the amount of time awarded each parent but with the terminology of legal and physical custody used to describe those relationships.

### Mother's Financial Condition

Mother next contends that there is no evidence to support the trial court's conclusion that her financial situation was a change of circumstances. She points out that Father admitted that her home with her parents was appropriate. Father points to testimony that Mother had to sell the marital home and moved a number of times between various forms of rental housing before moving back in with her parents. The majority of those moves, however, were not due to Mother's inability to pay, but were instead due to other reasons. In addition, Mother filed for bankruptcy in 2000. Father does not rely upon that fact in support of his arguments, however.

Mother is currently employed and testified that she can provide for the child's needs. However, there was also evidence that Mother was having difficulty paying the child's daycare expenses, as Father received a number of letters threatening to remove the child from daycare if payment was not forthcoming. Mother testified that the reason she was often late with payment was due to the delay caused by Father paying his child support into the court. The court would issue payment to Mother, but she would not receive it until between one and two weeks later. Father started to make payments directly to the daycare provider, though he withheld a portion of his child support payment, in turn. Mother's failure to pay daycare expenses was found as a separate changed circumstance forming grounds for modification. It will be discussed more extensively below, but those circumstances tend to support the trial court's finding that Mother was having financial difficulties with regard to care of the child.

While the evidence is a little sparse, there was evidence concerning substantial changes of Mother's employment, financial, and living arrangements since the dissolution. As mentioned above, there was also evidence that the Mother's financial problems were having an adverse effect on the parties' child. Together, the evidence minimally supports the trial court's finding that there had been a substantial and continuing change of circumstances with regard to Mother's financial condition.

### Failure to Communicate Regarding the Child's Health Care

Father contends that there was a substantial change of circumstances arising from Mother's failure to communicate with Father regarding insurance and health care for their daughter. The evidence

does suggest that Mother had failed to regularly communicate with Father regarding the child's health care and had not provided Father with the child's current insurance information. However, at the same time, Father had not been actively seeking that information. If anything, the evidence points to inaction on both parents' part. It would not seem to support a finding of sufficient changed circumstances to justify modification of the provisions of the original decree of dissolution.

### Lapse in the Child's Insurance

Mother contends that there was no evidence that she had let the child's health insurance lapse. Father testified that he "didn't know" whether Mother had maintained insurance for the child. Mother testified that she had continued to provide that insurance. Mother did not present any sort of documents or other exhibits showing that coverage, arguing that it was not her burden to prove such insurance.[4] Mother testified that she carried insurance for the child through work, then through COBRA after leaving employment, and finally through the MC Plus program. With regard to the doctor bill, the evidence established that Father did not take the child to her usual doctor. There was no evidence that Father determined whether the doctor would accept the child's insurance nor any evidence that a claim was filed with any insurer. Father did not request reimbursement from Mother for those expenses, despite the decree obligating her for one-half of all health care expenses not covered by insurance.

As the party seeking to modify the decree, it was Father's burden to come forward with evidence establishing that Mother had failed to maintain insurance on the child. There was no evidence before the

trial court that tended to establish that there had been a lapse in insurance. Accordingly, the trial court lacked substantial evidence to find a substantial change of circumstances on this ground.

### Father's Payment of Daycare Expenses

Father contends (and the trial court held) that he was forced to pay the child's daycare expenses and that this was a sufficiently substantial change of circumstances to necessitate modification of the original decree. There was evidence that Father paid the daycare expenses for two months in the fall of 2000. Father also paid daycare expenses from January 2002 through August 2002. He testified that he did so because Mother had failed to pay those expenses, causing the daycare provider to threaten to cease providing services. He also states, however, that he continued to pay the daycare provider by his own choice. While he was paying those expenses, he was simultaneously withholding equivalent amounts from Mother, in addition to completely withholding supporting in January and February 2002, to recoup the payments he made in 2000.

While there was evidence of a change of circumstances, there is little, if any, evidentiary support that the child's best interests were adversely affected by that change. The child was never actually denied daycare. That said, this change of circumstances, while not an independent basis for modification, does lend some support for the trial court's finding that there had been a substantial change of circumstances with regard to Mother's financial status.

 After a review of the record, we conclude that a finding of changed circumstances was supported by substantial evi-

---

4. Frankly, we are mystified by an advocacy approach that would not offer proof of insur-ance to the trial court even though it was not the party's "burden."

dence. Specifically, the change in the division of parenting time was a sufficient change of circumstances to justify the court's modification of the physical custody portion of the dissolution decree to provide for joint custody. The result of the modification order was that Father had 183 overnights and Mother had 182. We have already mentioned that Mother was agreeable to their existing unapproved plan with Father having 156 nights and Mother had no objection to him having some additional Saturday nights. We believe the trial court, by changing the arrangement's description to "joint physical custody," was reflecting what the parties had been practicing for several years. Mother makes no complaint about the actual division of time provided. Moreover, it is clear that Mother believed that continuation of the plan, with Father having far more parenting time than standard visitation, was in the child's best interests. She raises no argument on appeal that it does not. Given the substantial nature of this change, we need not consider whether Mother's financial and personal difficulties following the dissolution would independently support a finding of a change of circumstances. The trial court did not err in concluding that there had been a substantial change of circumstances since the original dissolution judgment that made a change to joint physical custody in the child's best interests. Mother's first point on appeal is, therefore, denied.

## II. Award of Sole Legal Custody to Father

Mother's second point on appeal contends that the trial court erred in changing the custody provisions of the original decree, awarding sole legal custody of the parties' child to Father. Father takes the position that the change of custody was justified and supported by substantial evidence.

In Missouri, joint legal custody is favored on public policy grounds. *See* § 452.375.4, RSMo. That preference for joint custody, however, is not absolute. It can be overcome in circumstances where the parents are consistently unable to agree regarding decisions relating to their child's welfare. *See In re Marriage of Haynes,* 913 S.W.2d 73, 74–75 (Mo.App. 1995). Ultimately, the focus is on whether the parents "show the willingness and ability to share the rights and responsibilities of child-rearing even after they have dissolved the marriage." *Burkhart v. Burkhart,* 876 S.W.2d 675, 680 (Mo.App.1994) (quoting *In re Marriage of Johnson,* 865 S.W.2d 412, 417 (Mo.App.1993)) (internal quotation marks omitted).

Father suggests that the change in legal custody was necessary because "the parents were not working together to ensure Abby's health, education and general welfare," and that there were "conflicts between Meyer and Block over health insurance, daycare, and the education of Abby."

The evidence, viewed in the light most favorable to the judgment, does not support Father's claims. While there was evidence that Mother had not been forthcoming with regard to the child's insurance information, there was no indication that Father sought such information or otherwise wished to be involved in such matters. Indeed, it appears that Father's only involvement with the child's health care occurred on a single instance where the child fell ill while in his custody.

Further, despite Father's claim that there were "conflicts" with Mother over other issues, there is no suggestion in the transcript of the kinds of animosity or inability to cooperate that would lead a reasonable factfinder to conclude that the parents were unable to work together to make decisions on the child's behalf.

There is some indication that Father may have had some disagreements with the child's daycare placement or the particular parochial school where the child was to be enrolled in, but those disagreements do not appear to rise to the level where the parties were unable to make decisions together regarding the child's well-being. Certainly, it did not rise to the level where Mother should have been excluded from the decision-making process.

The trial court, therefore, abused its discretion in terminating the prior award of joint legal custody and awarding Father sole legal custody of the child. Mother's second point on appeal is granted, and we reverse the trial court's award of sole legal custody to Father.

### III. Modification of Physical Custody and Visitation Schedule

While Mother's stated point on appeal addresses the trial court's change of physical custody of the child, Mother's arguments focus upon the changes to the visitation schedule. There appears to be no confusion of these closely related issues, however, and Father does not contend that Mother's arguments are not properly preserved by her stated point on appeal.

Mother contends that the trial court did not have sufficient grounds to modify the parenting time division with the child from their *de facto* arrangement, arguing that the only evidence was that Father "wanted more Saturdays." [5] The court, however, in determining whether there was a change of circumstances was required to look at the last judicial order and not the *de facto* arrangement made by the parties but never approved by the court. Father replies that there was also evidence in the record that even under the *de facto* visitation

schedule the parties had been following, Father would be facing reduced visitation time, since the child had reached school age. Whereas before he could take his daughter out of daycare if he wanted to spend time with her, he would not have the same liberty when the child was at school.

As discussed above, the trial court did not abuse its discretion in finding a substantial and continuing change of circumstances. The evidence supports the trial court's conclusion that there had been a substantial change of circumstances that warranted modification of the physical custody provisions of the original decree. *See generally, In re D.M.S.,* 96 S.W.3d 167, 171 (Mo.App.2003). With the parties' *de facto* change in physical custody, it was proper for the trial court to make appropriate modifications to the division of parenting time. The trial court could also take into account Father's concerns about losing time with the child due to her entry into school. Point denied.

### IV. The Child Support Arrearage

For her fourth point on appeal, Mother contends that the trial court erred in finding that Father owed no child support arrearage based upon his withholding of child support during the period he made payments to the child's daycare provider. She relies upon *Weaks v. Weaks,* 821 S.W.2d 503 (Mo. banc 1991), and *Ballard v. Hendricks,* 877 S.W.2d 232 (Mo.App.1994), for the proposition that Father did not have the authority to divert a portion of his child support directly to the daycare provider. She further argues that Father was not entitled to receive credit for the payments to the daycare provider because those payments were neither made with

5. As we have previously noted, Mother told the court that she did not have a problem

with Father having more Saturdays.

Mother's consent nor required under the circumstances.

■ A custodial parent has the sole authority to determine how to spend child support paid by the noncustodial parent. *Sutton v. Schwartz*, 808 S.W.2d 15, 20 (Mo.App.1991). Nor may a noncustodial parent dictate the method or manner of payment. *Id.* If the noncustodial parent pays all or a portion of the child support in a manner inconsistent with the dissolution decree, the noncustodial parent is typically not entitled to any credit for such payments.

Equitable principles may permit credit for a nonconforming payment, when those payments were made under the compulsion of the circumstances. *See Meyer v. Meyer*, 493 S.W.2d 42, 45 (Mo.App.1973). Those nonconforming payments must nevertheless substantially comply with the spirit and intent of the terms of the original child support judgment. *See Lieffring v. Lieffring*, 622 S.W.2d 519, 520 (Mo.App. 1981). This court has generally held, however, that the assent or acquiescence of a custodial parent to the nonconforming payment must be established. *See Ballard v. Hendricks*, 877 S.W.2d 232, 234 (Mo.App. 1994); *Lieffring*, 622 S.W.2d at 520–21; *Meyer*, 493 S.W.2d at 45–46.

Here, the record does not support a conclusion that Mother expressly assented or implicitly acquiesced to Father paying the daycare expenses in lieu of a portion of his monthly child support payment. Father directs us to no evidence that Mother agreed to the direct payments to the daycare provider. Instead, Father argues consent can be inferred because Mother asked him to provide additional assistance with the child's expenses in October and November 2000. That request for assistance does not reasonably admit a conclusion that Mother assented to Father's payments to the child's daycare provider starting in January 2002. While our standard of review requires us to view the evidence in the light most favorable to the judgment, that does not require us to accept inferences that are forced or unreasonable. *See Bauby v. Lake*, 995 S.W.2d 10, 13 n. 1 (Mo.App.1999).

Further, the threshold of the "compulsion of circumstances" test has not been met by the evidence. Father takes the position that he was required to make payments to the child's daycare provider to prevent termination of daycare services. He relies primarily upon *Sutton v. Schwartz*, 808 S.W.2d 15 (Mo.App.1991), which involved a situation where the noncustodial parent began to pay child support directly to the parents' daughter. *Id.* at 20. *Sutton* is distinguishable, however, as the nonconforming payments in that matter occurred with the consent of the custodial parent. *Id.* at 20.[6] Here, Mother's consent was not established.

■ What constitutes "compulsion of circumstances" must be determined on a case-by-case basis. *Ballard*, 877 S.W.2d at 236. The very fact-specific nature of the inquiry gives the trial court broad discretion in determining this issue. "Compulsion of circumstances" arises "when the custodial parent abandons the child or agrees to a change of custody." *Id.* at 235. *See also Steckler v. Steckler*, 293 S.W.2d 129, 135 (Mo.App.1956). It may occur, for

---

**6.** In *Sutton*, the Eastern District decided the issue on the basis that "parents can . . . agree to change the method of payment. . . . Since this does not compromise future support payments to the detriment of the children, it does not require judicial modification of the disso-

lution decree." *Id.* *Sutton* did not address the issue of "compulsion of circumstances," or provide any guidance as to what level of "compulsion" is necessary to invoke the exception.

example, when a custodial parent places a child in the care of a third party. Under those circumstances, the noncustodial parent was entitled to credit for child support payments made to the third party instead of the custodial parent. *See, e.g., M——— v. M———,* 313 S.W.2d 209, 213 (Mo.App. 1958). Similarly, a noncustodial parent may be accorded a partial credit against child support arrearages when the custodial parent leaves the child in the noncustodial parent's care for an extended period of time. See *Lieffring,* 622 S.W.2d at 521. On the other hand, a noncustodial parent is not entitled to credit for payments made where the parent "unnecessarily interposed and made himself a volunteer" in changing the method of payment when the custodial parent "did not consent to such method of payment." *Steckler,* 293 S.W.2d at 134.

▆ We observe that, here, while there was evidence that the daycare provider had sent letters threatening to terminate the child's daycare services due to nonpayment, it is not shown in the evidence that any threat was imminent. Certainly, those services were not actually terminated. Even if daycare services would have been terminated, it would not seem to rise to the level of "abandonment" as discussed in *Ballard* and *Steckler.*

Viewing the evidence in the light most favorable to the judgment, we conclude that the trial court's finding was not supported by substantial evidence sufficient to meet the thresholds set out in *Ballard* and *Steckler.* We therefore sustain Mother's fourth point on appeal, and remand that issue to the trial court for calculation of Father's support arrearage.

## V. The Parenting Plan

Mother's fifth point on appeal contends that the trial court erred in that the parenting plan incorporated in the judgment

fails to include provisions for a number of matters required by the parenting plan statute, Section 452.310, RSMo. Specifically, she argues that the parenting plan fails to provide sufficient detail with regard to: (a) educational decisions; (b) medical, dental, and health care decisions; (c) decisions regarding the child's extracurricular activities; and (d) decisions with regard to child care providers.

▆ We observe, in reviewing the parenting plan, that much of its language tracks language contained in the parenting plan guidelines promulgated by the Missouri Supreme Court, and where it differs from those guidelines, it is no less specific than the alternatives suggested by the guidelines. The parenting plan adopted by the court provides that the parents are to confer with regard to those decisions, and provides a mechanism for decision-making in situations where the other parent cannot be readily consulted. In our view, the parenting plan does not suffer from a lack of detail, especially in light of the overall history of cooperation between the parents with regard to the child. Point denied.

## VI. The Form 14 Adopted by the Trial Court

In her final point on appeal, Mother claims that the trial court erred in failing to adopt one of the parties' Form 14 calculations or the court's own calculations. While it is not expressly stated in the judgment, it is readily apparent by comparing the judgment with the proposed Form 14 calculations that the trial court adopted Father's Form 14 calculations. Under similar circumstances, we have found no error by the trial court. *See, e.g., Shiflett v. Shiflett,* 954 S.W.2d 489, 493 (Mo.App.1997). We reach the same conclusion here. Point denied.

## CONCLUSION

Having reviewed Mother's points on appeal, the judgment below is affirmed in part and reversed in part. We reverse the trial court's judgment with regard to its award of sole legal custody to Father and with regard to the Court's finding that there was no child support arrearage owed by Father. We remand the matter with instructions that the trial court award joint legal custody to the parties and to calculate Father's support arrearage. In all other respects, the judgment below is affirmed.

PAUL M. SPINDEN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.