A: No.

**Sharon L. (Deming) WEBER, Appellant,**

v.

**John D. DEMING, Respondent.**

**No. WD 69538.**

Missouri Court of Appeals, Western District.

Sept. 29, 2009.

James W. Kelly IV, Esq., Springfield, MO, for appellant.

Christina E. Gondring, Esq., Kansas City, MO, for respondent.

Before JAMES EDWARD WELSH, P.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellant Sharon (Deming) Weber ("Mother") appeals from a circuit court judgment which abated the child support obligations of her ex-spouse, Respondent John Deming ("Father"), during a period when the parties' children were not living with Mother. Because Father failed to submit evidence to show that he was entitled to an abatement of his child support obligations under the equitable doctrine on which he sought to rely, we reverse in part, and remand for further proceedings.

## Factual Background

A dissolution decree entered on September 10, 1991, awarded Mother the care, custody, and control of the parties' two minor children ("Son" and "Daughter"), subject to Father's visitation rights. On October 13, 2000, the judgment was modified to order Father to pay $700.00 in monthly child support commencing August 15, 2000. At the time of this modification, both children lived with Mother in Springfield.

Mother entered a treatment center for alcohol abuse in June 2004. At that time, the children went to live with third parties; they returned to live with Mother from September 2004 until November 2004, when both children moved in with Father for approximately two weeks. After that two-week period, Daughter returned to live with third parties, where she remained through November or December 2005, when she moved back in with Mother. Daughter has lived with Mother since that time. Son continued to live with Father from November 2004 at least until his graduation from high school in May 2006. Son was emancipated by agreement of the parties in 2006.

Father stopped paying child support in July 2004. In September 2004, Father's employer received an "Order/Notice to Withhold Income for Child Support/Terminate Order/Notice" from the Missouri Division of Child Support Enforcement, stating that no support was owed, and di-

recting Father's employer to withhold nothing. Based upon that notice, as well as three additional notices from the Missouri Department of Social Services indicating that Father had overpaid child support and was entitled to a refund,[1] Father assumed that his child support obligations had terminated.

Father did not pay any child support between July 2004 and March 2007. In March 2007, the Division of Child Support Enforcement issued an "Order/Notice to Withhold Income for Child Support" to Father's employer, which indicated that Father's employer was to deduct from Father's wages $700.00 per month for current child support, and $350.00 per month for past-due child support.

Father filed his "Motion to Terminate Child Support and Motion to Clarify and/or Correct [Father]'s Child Support Arrearage" on May 21, 2007. Mother filed a response, which she joined with a motion to modify the dissolution decree. In her Motion, Mother alleged that Son had been emancipated in June 2006, and that circumstances justified a modification of Father's child support obligation for Daughter.

A Stipulated Temporary Order was entered by the trial court on October 2, 2007. That order specified that Father would pay Mother $640.00 per month for temporary child support, for Daughter alone, pending a final hearing. The Temporary Order also provided that Father would make no payments against any child support arrearage until further order.

The circuit court held a hearing on the parties' respective motions on January 30, 2008. Although certain exhibits were admitted at the hearing, and the basic facts described above were admitted by stipulation, no testimony was presented, leaving considerable uncertainty as to the children's living arrangements during the period in which they were not living with Mother. Thus, Father acknowledged in this Court that the record does not identify the children's caretakers during this period, identify who paid for the children's care at the time, or establish whether and to what degree Mother contributed to the children's support.

The circuit court entered its Judgment and Decree of Child Support Modification on March 24, 2008. In its Judgment, the trial court abated Father's child support obligation as to Son from June 1, 2004, through October 31, 2004, and terminated that obligation as of November 1, 2004. The trial court ordered Father's child support obligation for Daughter to be abated from June 1, 2004, through December 31, 2005; modified and reduced it to $350.00 per month from January 1, 2006, through June 30, 2007; and modified it to $661.00 per month beginning on July 1, 2007. Mother appeals.

### Analysis

Under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we must affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law.

### I.

In her first Point, Mother claims that the trial court erred in abating Father's child support obligations as to both children.[2] We agree.

---

1. As Mother points out, the letters from the Department of Social Services addressed to Father explicitly state that "[t]his letter is not proof that your support obligation has ended or that you do not owe past-due child support."

2. Mother's Point Relied On asks this Court to reverse the abatement order as to Daughter

■ "Ordinarily, the parent who is obligated to pay child support must strictly comply with the dissolution decree, or must seek a court-ordered modification if changed circumstances occur." *Ballard v. Hendricks*, 877 S.W.2d 232, 235 (Mo.App. W.D.1994); *Linford v. State, Dep't of Soc. Servs.*, 987 S.W.2d 507, 510 (Mo.App. E.D. 1999).

Father argues that we should consider the equities of the situation here, and on that basis affirm the trial court's abatement of his child support obligation for the periods at issue. We conclude, however, that Father failed to substantiate his claim for abatement in the trial court with evidence.

In *Ballard*, this Court addressed "the unique circumstances where the custodial parent seeks back child support from the obligated parent for the time a third party [there, the maternal grandparents,] voluntarily supported the child." 877 S.W.2d at 236. The Court reviewed caselaw from other jurisdictions, and concluded that:

> Courts releasing the obligated parent from accrued child support payments focus primarily on whether the child has received adequate support and on whether award of back support would represent unjust enrichment to the custodial parent; other considerations include whether the [third party] expected remuneration, whether the parents allowed the [third party] to have custody, and whether either parent provided any care or support.

*Id.*

*Ballard* found that the equities of the situation in that case, as established by testimony of the father, the mother, and the maternal grandfather, supported abating the father's child support obligations for the multi-year period during which the child lived with, and was supported solely by, his maternal grandparents:

> [T]he equities of the circumstances presented here demand that [father] be released from payment of the back child support. The uncontroverted evidence shows that the [third party grandparents] provided [son] with a stable home and with more than adequate care and support for nearly ten years. The [grandparents] obtained guardianship of [son], and released both parents from their duties of providing care and support. Both parents recognized the [grandparents]' custody of [son].... [Father] did not make child support payments to respondent while the [grandparents] had custody because he relied on his written release from the [grandparents]. Nevertheless, [father] recognized his duty to resume child support payments to [mother] when [son] returned to her custody. On the other hand, [mother]'s contact with [son] was sporadic, although she did visit him and buy him some gifts. [Mother] paid the [grandparents] nothing toward [son]'s support, and made little effort to provide him with care. [Mother] waited over nine years before seeking to enforce payment of the back child support. Under these circumstances, [mother] should not be allowed to recover child support payments for care and support she never provided. Such an allowance

only "between June 1, 2004 and *October 31, 2005*." The court's order plainly abated Father's support obligation as to Daughter through *December 31*, 2005, however. Neither party argues that the justification for abatement of child support during November and December 2005 is any different from the reasons supporting abatement during the remainder of the relevant period. In these circumstances, our reversal entitles Mother to child support for the entire period during which the trial court ordered it abated, including November and December 2005.

would represent unjust and inequitable enrichment to [Mother].

*Id.* at 236–37. Following *Ballard,* the Eastern District reached the same result, on strikingly similar facts, in *Linford,* 987 S.W.2d at 510–11.[3]

■ As the movant requesting the abatement of child support otherwise due pursuant to a valid and binding judicial decree, Father had the burden to establish his entitlement to relief from the existing judgment. On the limited record before us,[4] however, we cannot agree that he met his burden. Father's counsel acknowledged at oral argument that there is no evidence in the record to establish: the identity of the foster parents; whether the foster arrangement was "official"; the nature of the care provided to the children during the periods they were not living with Mother and how that care was paid for; or whether the foster parents expected any remuneration during the time the children were in their care. As if to accentuate the lack of evidence in the record concerning the children's living arrangements during the period in question, Father's brief refers to their custodians euphemistically as " 'foster' " parents. In addition, while the facts in *Ballard* and *Linford* established that the custodial parent provided no support to the third parties in whose custody the children were placed, Father's counsel stated in the trial court that he "ha[d] no doubt" that Mother contributed support, at least to Daughter, in some degree, although he acknowledged that "I haven't received any evidence" of

such support. Thus, not only did Father not establish that Mother provided no support for the children while they were in foster care, his own counsel's statements suggest just the opposite (at least as to Daughter).

Father's counsel repeatedly emphasized in the trial court that Mother's failure to request the support payments at the time, as well as her delay in requesting back child support after-the-fact, weighed in favor of releasing Father from his child support obligations while the children were in foster care. At the hearing, however, counsel for the parties disputed whether, and when, Mother requested support while the children were in foster care. No evidence was presented to resolve this issue.

The resolution of disputed factual issues must be based on evidence, and the arguments of counsel (particularly where disputed) are not evidence. *See In re Estate of Bell,* 292 S.W.3d 920, 926–27 (Mo.App. W.D.2009). It was Father's burden to establish his entitlement to abatement with competent evidence, including establishing any facts relevant to the issue (such as Mother's failure to support the children at relevant times, or to timely request payment from Father). He failed to do so.

As the *Ballard* and *Linford* cases recognize, where a party obligated to pay child support under a judicial decree believes that changed circumstances justify a reduction or complete elimination of his or her court-ordered support obligation, that party should seek an appropriate modifica-

---

3. *Ballard* also recognized that, in certain circumstances, a separate "substantial compliance" doctrine can excuse literal compliance with an obligated spouse's child support obligations as specified in a dissolution decree (most frequently, where the obligated spouse makes payments directly to third parties providing care or services to the child, rather than to the custodial parent). *See* 877 S.W.2d

at 235–36. Father does not invoke this "substantial compliance" doctrine here, however, presumably because it is uncontested that Father made *no* child support payments, to anyone, during the time period at issue.

4. Apart from arguments of counsel, the record consists only of a stipulated timeline and a few documents and opposing Form 14s.

tion of the judgment in a court having jurisdiction. Obligated spouses do not generally have license—unilaterally and with impunity—to disregard their obligations under a dissolution decree. *Ballard* and *Linford* recognized a narrow exception to this rule, in what both cases characterized as the "unique circumstances" presented there. Here, Father failed to prove his entitlement to abatement of his child support obligations with evidence sufficient to invoke the equitable doctrine recognized in those cases. We accordingly reverse the trial court's abatement ruling, and remand to the trial court to determine the amount of back child support Father owes as to Son between June 1, 2004, and October 31, 2004, and as to Daughter between June 1, 2004, and December 31, 2005.

## II.

Besides abating Father's child support obligation as to both children for a period of time, the trial court also terminated Father's child support obligation as to Son as of November 2004, when he began living with Father. Mother does not challenge that aspect of the judgment. Because it had held that Mother was entitled to child support only for Daughter after November 2004, the trial court set Father's child support obligation, as to Daughter alone, at $350.00 per month from January 2006 (when the court determined that Mother's right to child support for Daughter resumed) through June 30, 2007 (the month preceding Mother's most recent motion to modify). The trial court adjusted Father's child support obligation as to Daughter to $661.00 per month beginning July 1, 2007.

■ In her second Point, Mother alleges that the trial court erred in failing to utilize the calculation specified in Rule 88.01 and Form 14 in modifying the amount of Father's child support obli-

gation for Daughter to $350.00 for the January 2006 through June 2007 period.

Mother claims that "only clairvoyance of Nostradamian dimensions could have suggested the possibility that a Form 14 for the period between January 1, 2006 and June 30, 2007 needed to be submitted by [her]," and requests that the case be remanded for recalculation, using Form 14, of the appropriate child support for Daughter alone for the pre-July 2007 period.

■ Although Mother claims surprise at the trial court's determination that an award of $350.00 per month was appropriate, the record indicates that Mother affirmatively invited this outcome below. After acknowledging that Father was entitled to abatement of his support obligation as to Son as of the time Son began residing with Father, Mother's counsel argued:

> And so in the calculations that we're going to present to you, Your Honor, in terms of our determination of what the arrearages are, if you will examine, when you examine them you will see that *as of the time from when [Son] went to live with his dad, up until the time he left his dad's place to go to school full-time, we're absolutely giving him a credit in the form of $350 per month. The existing order was $700. We're suggesting that his child support should have abated to $350 or that amount that would be attributable to one child.*

Thus, although Mother now claims that the trial court should have used Form 14 to calculate Father's support obligation for Daughter prior to July 1, 2007, Mother herself argued that $350.00 per month was the appropriate figure. "[I]nvited error at trial cannot serve an appellant on appeal." *Sullivan v. Sullivan,* 159 S.W.3d 529, 541 (Mo.App. W.D.2005) (internal quotation marks and citation omitted).

Moreover, Mother admits that she did not submit a Form 14 to the trial court to support a modification of any *past-due* child support with respect to Daughter. And despite her claim that "only clairvoyance of Nostradamian proportions" would have foretold the need for such a filing, the argument of Mother's counsel quoted above reflects Mother's awareness that there would be a need to recalculate Father's support obligations for Daughter only, both looking backward and prospectively. "One who wishes to complain about a child support calculation must have submitted a Form 14 to the trial court." *Yun v. Yun,* 908 S.W.2d 787, 791 (Mo.App. W.D.1995) (citing *Ibrahim v. Ibrahim,* 825 S.W.2d 391, 398 (Mo.App. S.D.1992)); *see also Engeman v. Engeman,* 123 S.W.3d 227, 238–39 (Mo.App. W.D.2003). Mother's failure to submit a Form 14 covering the time period at issue in the trial court provides a further basis for denying her second Point.

### Conclusion

We reverse the trial court's judgment to the extent it abated Father's child support obligations as to Son between June 1, 2004, and October 31, 2004, and as to Daughter between June 1, 2004, and December 31, 2005, and remand to the trial court to determine the amount of any unpaid arrearage for those time periods. Given Mother's agreement below that $350.00 per month was an appropriate support amount for Daughter alone prior to July 1, 2007, that amount should be used to calculate any arrearage during the entire period from November 1, 2004, through June 30, 2007. The judgment is in all other respects affirmed.

All concur.