DeBALIVIERE PLACE
ASSOCIATION,
Respondent,

v.

Steven VEAL, Appellant.

No. SC 91138.

Supreme Court of Missouri,
En Banc.

April 12, 2011.

Elkin L. Kistner, Bick & Kistner PC, St. Louis, for Veal.

Ira M. Berkowitz, Marvin J. Nodiff, Law Office of Marvin J. Nodiff PC, St. Louis, for Association.

Anthony J. Soukenik, Sandberg, Phoenix & von Gontard PC, St. Louis, for Community Associations Institute, which filed a brief as a friend of the Court.

MICHAEL A. WOLFF, Judge.

### Introduction

This appeal raises two questions:

(1) Does a neighborhood association—a nonprofit corporation—have the authority to assign its rights to enforce assessments on properties in the neighborhood 14 years after the secretary of state dissolved the corporation?

(2) Does a new neighborhood association with the same name have the right to enforce a covenant running with the land (a) before assignment from the former association and (b) after the former association's assignment of its rights to the new association?

### Facts and Proceedings in the Circuit Court[1]

The secretary of state in 1992 dissolved the DeBaliviere Place Association, a nonprofit corporation with the right to collect assessments on property within a neighborhood in the west end of St. Louis, for failing to file its annual registrations. A new DeBaliviere Place Association was incorporated 11 years later. The former association assigned its rights and obligations—to collect the assessments and other fees that are in the declaration—to the new association in June 2006, about 14 years after the former association's corporation was dissolved.

This appeal arises from a judgment in two consolidated actions in which the new DeBaliviere Place Association filed legal actions to foreclose on the liens the association had filed against properties owned by Steven Veal on which he had not paid the assessments.

The former DeBaliviere Place Association was incorporated in 1977 as a neighborhood association responsible for "collecting and disbursing the assessments and charges ... and promoting the recreation, health, safety and welfare of the residents of DeBaliviere Place." The declaration said that all properties under the authority of DeBaliviere Place Association were subject to certain covenants and restrictions, which were recorded in the deed of each property in the area covered by the association.

---

1. An apology may be made to readers who may find the facts and proceedings confusing. Through no fault of the circuit court judge, the facts of this case are a gallimaufry, a word used several times a generation ago in the court of appeals to signify a hodgepodge, jumble or confused medley. *Earl v. St. Louis University*, 875 S.W.2d 234 (Mo.App.1994) (C. Gaertner, J.); *Lake Thunderbird Property Owners Ass'n, Inc. v. Lake Thunderbird, Inc.*, 680 S.W.2d 761 (Mo.App.1984) (C. Gaertner, J.); *State ex rel. State Highway Com'n of Missouri v. Koziatek*, 639 S.W.2d 86 (Mo.App.1982) (Gunn, J.); *Tri–Continental Leasing Co. v. Neidhardt*, 540 S.W.2d 210 (Mo.App.1976) (Gunn, J.); *Moise v. Robinson*, 533 S.W.2d 234 (Mo.App.1975) (Simeone, J.); *Rodden v. Rodden*, 527 S.W.2d 41 (Mo.App.1975) (Gunn, J.); *Benjamin v. Benjamin*, 370 S.W.2d 639 (Mo.App.1963) (Cottey, Special Comm'n.). The word "gallimaufry" since has fallen into disuse, though the concept appears alive and well.

The circuit court in this case seems deftly to have deployed the oft-cited concept, "Occam's razor"—a scientific concept loosely used in cases and other legal writings to indicate a preference for the simplest solution—to resolve the case most simply by enforcing all of the liens. The circuit court's effort at simplicity was worthy, but, alas, too simple, a situation that sometimes is thought to justify the existence of an appellate court.

Veal acquired apartment buildings at 5621–5623 Delmar Blvd., 5540–5548 Delmar Blvd. and 5621–5623 Delmar Blvd. in 1997. These properties are subject to numerous easements, restrictions, covenants, provisions and building lines, including provisions in the deeds making the properties subject to DeBaliviere Place Association's declaration. The declaration requires Veal, as a property owner, to pay assessments, special assessments, costs, interest and attorneys' fees for collection of unpaid assessments.[2] The declaration and other provisions are covenants that run for 50 years and are renewed automatically. An owner may not waive or otherwise avoid liability for the assessments due to nonuse of the common areas or by abandonment of the property.

Veal never has paid any assessments for these Delmar Boulevard properties, though he has paid assessments for other properties he owns that are subject to the DeBaliviere Place Association.

■ After the new DeBaliviere Place Association was formed in 2003, it billed Veal for his annual general assessments from 1998 forward for each of his units. Veal refused to pay, claiming that he had received no services from either the former or new DeBaliviere Place Association. The new DeBaliviere Place Association filed liens against the properties for the assessments, interest, late fees and attorneys' fees. When the amounts billed went unpaid, the new DeBaliviere association filed an action in the circuit court in February 2006 to foreclose on the liens and recover the amounts claimed or, alterna-

tively, the value of services provided under *quantum meruit*.[3]

After the February 2006 lawsuit was filed, the former DeBaliviere association in June 2006 assigned all its rights, titles, interests, powers, duties and obligations under the declaration and its amending documents to the new DeBaliviere Place Association. Neither the declaration nor the articles of incorporation specify any particular procedure for assigning rights or liabilities. The former DeBaliviere Place Association and the new association with the same name executed an agreement signed by the president of each organization. The agreement assigned all rights and all duties in the original declaration in favor of the former association to the new DeBaliviere Place Association.

The new DeBaliviere Place Association recorded two new liens in 2007 against the 5560–5564 Delmar Blvd. and 5540–5548 Delmar Blvd. properties to recover the assessments owed from 1998 forward, including interest, late fees and attorneys' fees. The new association filed an action in circuit court in 2007 to foreclose on these 2007 liens and enforce these alleged obligations. The circuit court consolidated the 2006 and 2007 actions. The new DeBaliviere Place Association moved for summary judgment.

The circuit court held that there was a valid assignment from the former DeBaliviere Place Association to the new DeBaliviere Place Association and that the new association had the right to enforce the declarations in Veal's deeds. In granting summary judgment in the consolidated cases, the court determined that Veal owed

---

2. From 1997 through 2005 assessments were $46 annually per unit. Through a 2005 resolution, the board of directors of the new DeBaliviere Place Association raised the annual assessments to $51.

3. *Quantum meruit* is a request for "the reasonable amount of services; damages awarded in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship." BLACK'S LAW DICTIONARY 1255 (7th ed.1999).

$70,856 for the assessments, plus interest and attorneys' fees. After opinion in the court of appeals, this Court granted transfer. Mo Const. Art. V, sec. 10.

### Standard of Review

The Court reviews the record in the light most favorable to the party against whom summary judgment was entered. *Zafft v. Eli Lilly,* 676 S.W.2d 241, 244 (Mo. banc 1984). Summary judgment is appropriate when there is no genuine issue of material fact. *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 (Mo. banc 2007). A genuine issue exists when the record shows two plausible but contradictory accounts of essential facts. *Id.* The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact. *Id.* "The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

### 1. Did the former DeBaliviere association have authority to assign its rights to the new association?[4]

Veal does not dispute that his property deeds contain restrictions making his use

of the property subject to the former DeBaliviere Place Association's declaration. It also is undisputed that the declaration mandates the payment of assessments, interest and attorneys' fees and authorizes the DeBaliviere association to file liens and collect the amounts due by filing an action to foreclose.

But the threshold question is whether the new DeBaliviere association is the appropriate party to enforce the declaration. To answer this question requires the Court, first, to determine whether the former association had the authority to assign its rights to the new DeBaliviere association and, second, if it did have such authority, to analyze and apply the language of the deeds' declaration at two different times—before the June 2006 assignment and after the assignment.

When the former DeBaliviere association executed the agreement assigning its rights and delegating its duties under the declaration to the new DeBaliviere association in June 2006, the former association no longer was incorporated and was in the winding-up process. The new DeBaliviere association argues that it was authorized to enforce the declaration because the former DeBaliviere association properly assigned its rights and delegated its duties

---

4. In this Court, the new DeBaliviere Place Association filed a motion to dismiss Veal's appeal, strike his substitute brief or, in the alternative, strike portions of Veal's statement of facts. This motion alleges that Veal's brief contains 10 facts that are not contained within the summary judgment record.

A summary judgment record includes the supporting evidentiary material and may include affidavits based on personal knowledge. Rule 74.04. Evidentiary material is considered on a motion for summary judgment and must comply with Rule 74.04(a) and (b); the rule requires the parties to support and op-

pose the motion with specific references to the pleadings, discovery, exhibits or affidavits that show that there is no genuine issue of material fact or that there are material facts in dispute that need to be resolved by a trial. As long as the facts asserted are supported as required by Rule 74.04, they may be relied on by the party seeking or opposing the motion for summary judgment. Because Veal's contentions appear to meet this standard, the new DeBaliviere Place Association's motion to dismiss appellant's appeal, strike his substitute brief or, in the alternative, strike portions of appellant's statement of facts is overruled.

to the new DeBaliviere association.[5] For the assignment to be valid, the former DeBaliviere association must have authority to execute an assignment pursuant to its winding-up process and must have executed the assignment properly.

### a. Assignment of rights and delegation of duties are appropriates part of the winding-up process

The validity of the former DeBaliviere association's assignment is determined by section 355.691, RSMo 2000, which specifies the permissible activities of a dissolved corporation:

> A dissolved corporation continues its corporate existence but may not carry on any activities except those appropriate to wind up and liquidate its affairs, including:
>
> (1) Preserving and protecting its assets and minimizing its liabilities;
>
> (2) Discharging or making provision for discharging its liabilities and obligations;
>
> (3) Disposing of its properties that will not be distributed in kind;
>
> (4) Returning, transferring or conveying assets held by the corporation upon a condition requiring return, transfer or conveyance, which condition occurs by reason of the dissolution, in accordance with such condition;
>
> (5) Transferring, subject to any contractual or legal requirements, its assets as provided in or authorized by its articles of incorporation or bylaws;
>
> . . .

> (8) Doing every other act necessary to wind up and liquidate its assets and affairs.

■ Assignment of rights under a contract is within the bounds of "winding-up and, therefore, is a permissible activity." *Smith v. Taylor–Morley, Inc.*, 929 S.W.2d 918, 923 (Mo.App.1996).

■ Veal argues that, according to his reading of the declaration, the assessments are to be used only for purchasing additional property for the development area. Enforcement of the assessments is not a proper winding-up activity, he argues, because by collecting a general assessment, the new association is doing so to add property to the land subject to the declaration.

But the question is whether the former association had the authority to assign its rights—not how the new DeBaliviere Place Association is authorized to spend the money collected from the assessments. The former DeBaliviere association can assign any right to the new DeBaliviere association without exercising that right. There is nothing in section 355.691—which specifies the authority of a dissolved corporation—to prohibit the new association from exercising its rights under the declaration.

### b. The statute limiting rescission does not govern a dissolved corporation

■ Veal argues that section 355.507.4 RSMo, which was in effect in 1992 when the secretary of state dissolved the former DeBaliviere association, prevents the former association from assigning its rights.

5. The new DeBaliviere association argues that Veal cannot challenge the assignment because, it says, Veal admitted in his response to the association's motion for summary judgment that there was a valid assignment to the new association. Veal only admitted that there was an assignment. He did not admit that the former DeBaliviere association had the authority to assign its rights. Moreover, Veal's pleadings challenge the propriety of the billing and collection of the liens, which is a challenge to the authority of the new DeBaliviere association's assessment and collection of the liens.

Section 355.507.4, a corporate forfeiture statute that was repealed in 1995,[6] said, "No rescission shall be made after ten years following forfeiture under this section." Section 355.507.4, RSMo 1986. This rescission statute, however, does not dictate the permissible activities of a dissolved corporation. The statute merely provides that the secretary of state may not rescind the forfeiture after 10 years. After 10 years, in other words, a corporation that is dissolved stays dissolved and cannot be revived by a rescission. ·

Assignment of rights, by contrast, is a permissible winding-up activity. The former time limitations for rescission of forfeiture do not apply. The secretary of state did not rescind the former DeBaliviere association's forfeiture; rather, a new corporation under the same name, DeBaliviere Place Association, was formed. Veal's reliance on this repealed statute is misplaced.

▆ Veal argues, however, that the 10–year limitation on rescission applies to the winding-up process. There is no set time period for winding-up. *Prange v. Prange,* 755 S.W.2d 581, 589 (Mo.App. E.D.1987); *State Auto. and Cas. Underwriters v. Johnson,* 766 S.W.2d 113, 123 (Mo.App. S.D.1989); *Centerre Bank of Kansas City, Nat. Ass'n v. Angle,* 976 S.W.2d 608, 618 (Mo.App. W.D.1998). There is no case law

and no logic to support Veal's argument that the winding-up period should be limited to the former 10–year limit on rescission.

### 2. The new DeBaliviere association's authority to enforce the assessments

#### a. *Before the June 2006 assignment*

▆ The new DeBaliviere Place Association first billed Veal in 2003 to collect assessments owed under the declaration from the date in 1997 when Veal bought the properties until 2003. The declaration expressly provides that the "association" shall "enforce the covenants and restrictions herein set forth." The billing and enforcement of the assessments are one of the covenants that the association is authorized to enforce. The declaration provides that the "association" "shall mean and refer to DeBaliviere Place Association, a Missouri not-for-profit corporation, the former association's successor and assigns."

▆ When interpreting the declaration—which is simply a contract—it is necessary to ascertain the intent of the parties and give effect to that intention. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). In an unambiguous contract, the intent of

---

**6.** Although section 355.507.5 was repealed in 1995, it still would govern rescission of the DeBaliviere corporate forfeiture three years earlier. Section 355.871 says:

The repeal of former chapter 355 does not affect:
(1) The operation of the statute or any action taken under it before its repeal;
(2) Any ratification, right, remedy, privilege, obligation or liability acquired, accrued or incurred under the statute before its repeal;
(3) Any violation of the statute or any penalty, forfeiture, or punishment incurred because of the violation, before its repeal;

(4) Any proceeding, reorganization or dissolution commenced under the statute before its repeal, and the proceeding, reorganization or dissolution may be completed in accordance with the statute as if it had not been repealed; or
(5) Any meeting of members or directions or action by written consent noticed or any action taken before its repeal as a result of a meeting or members or directors or action by written consent.
Section 355.871, RSMo Supp.2010.

the parties is to be discerned from the contract alone. *Id.* The declaration gives authority to: a) the DeBaliviere Place Association that existed at that time or b) any successor or assign in interest. The declaration states that the association shall "enforce the covenants and restrictions herein set forth." The declaration says "'Association' shall mean and refer to De-Baliviere Place Association, a Missouri not-for-profit corporation, its successors and assigns."

Because the new DeBaliviere Place Association did not exist when the declaration was written, it cannot be the "DeBaliviere Place Association" referred to in the declaration. As importantly, the new association in 2003 was neither the former association's successor nor assignee. Black's Law Dictionary defines "successor" as "a corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation[,]" and "assign" as "one to whom property rights or powers are transferred by another." BLACK'S LAW DICTIONARY, 114, 1446 (7th ed.1999). For the new DeBaliviere association to be either a successor or assign there must have been a transfer of the rights and duties from the former DeBaliviere association to the new DeBaliviere association.

Before the June 2006 assignment, no rights held by the former DeBaliviere association had been transferred to the new DeBaliviere Place Association; therefore, the new DeBaliviere Place Association was not a successor or assignee entitled to enforce the declaration until the assignment was made.

Between 1997 and June 2006, the new DeBaliviere association was not an entity entitled to enforce the contract and, therefore, was not authorized to file the 2005 lien against the property or foreclose on the lien in the 2006 circuit court action to enforce the declaration. Before the June 2006 assignment, the new DeBaliviere association in 2005 attempted to collect the amount Veal owed under the covenant running with the land. At that time, the new association was not authorized to bill or collect any amount owed under the declaration. The circuit court erred in foreclosing on the 2005 liens because, at the time, the new DeBaliviere association did not have authority to exercise the authority that belonged to the former association. *Cf., Pioneer Point Homeowners Ass'n, Inc. v. Booth,* 179 S.W.3d 397 (Mo.App. 2005).

### b. Extent of the new DeBaliviere association's authority

Veal does not challenge the method of assignment or the authority of the president of the former corporation to have executed the assignment on behalf of the dissolved corporation. When responding to the new DeBaliviere Place Association's motion for summary judgment Veal admits that "The original DeBaliviere Place Association assigned all rights to the current DeBaliviere Place Association (respondent)." Veal's only challenge to the assignment is his contention that the dissolved corporation had no authority to assign its rights—a contention the law does not support.

The former DeBaliviere association had the authority to assign its interest—and did assign its interest—to the new DeBaliviere association in June 2006. After the assignment, the new DeBaliviere Place Association had the authority to exercise any right in the declaration—including billing, collecting, filing liens and enforcing the payment of assessments.

 The assignment allows the new DeBaliviere association to collect prior assessments owed to the former DeBaliviere

association as well as to bill and collect for future assessments. In an assignment, the assignor gives all its rights to the assignee. *Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. banc 2002). Due to its covenant running with the land, the former DeBaliviere association had a right to an assessment—$46 per year, per single-family unit—every year. When the assignment occurred in 2006, the new DeBaliviere association had the right to collect assessments due under the covenant running with the land and owed under the declaration.

### 3. Foreclosure of the 2007 liens

 Veal argues that the trial court's foreclosure of the 2007 liens—which occurred after the June 2006 assignment—is invalid because the new DeBaliviere association did not follow the provisions in the declaration for foreclosure of the liens. The declaration provides:

> Every assessment authorized hereunder shall become a lien upon the property to which it relates, whenever, being unpaid thirty (30) days after the date it is due, it shall be so declared by the Board of Directors by instrument in writing, executed, acknowledged and recorded ... Whenever any assessment is delinquent for a period of ninety (90) days after the filing and recording thereof as aforementioned, the Board of Directors may take any legal steps necessary or appropriate for the collection thereof, including the institution and prosecution of a suit....

The new DeBaliviere association filed a lawsuit to enforce the lien only 22 days after filing the lien.

Failing to wait 90 days to bring suit violates the provisions of the declaration. What is the effect of the fact that the action was filed prematurely? Certainly Veal could have raised this by motion at the outset, and the remedy would have been a dismissal without prejudice to DeBaliviere Place Association bringing the action after the 90 days had passed.

The premature filing does not appear from the declaration to be fatal to the capacity of the association to bring suit. This Court's reading of the declaration is that it goes only to the timing, not the substance of the action, and the fact that Veal did not raise the matter at the outset leads to the conclusion that the requirement is waived after the 90-day period has expired.

### 4. *Quantum meruit*

The circuit court granted the motion for summary judgment on the foreclosure of liens both before and after the June 2006 assignment from the former association to the new association. The court erred in granting summary judgment on the liens filed before the former association assigned its rights to the new DeBaliviere association.

 But the new DeBaliviere association also sought relief in *quantum meruit* in the event that its liens were not enforced. The new association seeks compensation for its provision of general maintenance to the common elements, insurance, utilities and other services, arguing that Veal knowingly accepted its services and should compensate the new association for all services provided.

But Veal disputes the contention that the association provided services to the Delmar Blvd. properties. "A 'genuine issue' exists where the records contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382. Veal says the record shows that services were not provided, and the new DeBaliviere association claims that services were provided. The

two contradictory accounts create a genuine issue of material fact that bars summary judgment on the *quantum meruit* claim.

### 5. Should this Court enter judgment against the new association as to the liens filed before the assignment?

When the new DeBaliviere association moved for summary judgment on the liens, it took the position that there was no genuine issue as to any material fact. Recognizing that the judgment on the liens filed before the 2006 assignment should be reversed, the question on this appeal is whether this Court should enter judgment in favor of Veal on that claim.

Rule 84.14 provides that "the appellate court shall award a new trial or partial new trial, reverse, or affirm the judgment or order of the trial court, in whole or in part, or give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case." Rule 84.14.

██ Veal did not seek summary judgment in the circuit court and so there is no cross-appeal from an order denying him summary judgment. Even if there were, the case is not appropriate for this Court to enter a final judgment under Rule 84.14 "as the court ought to give" because the new DeBaliviere Place Association may seek to file or enforce liens on amounts due before the 2006 assignment or to pursue its *quantum meruit* claim. An appellate court may give judgment as the circuit court ought to have given, but only in circumstances that indicate there is no further need for proceedings in the circuit court. That is not the situation here.

### Conclusion

That portion of the judgment foreclosing the liens filed before 2006 is reversed; in all other aspects the judgment is affirmed, including foreclosing the liens filed after the 2006 assignment. The case is remanded.

All concur.