THOMAS H. NEWTON, Presiding Judge, and GARY D. WITT, Judge, concur.

---

Amanda N. THOMAS, Respondent,

v.

Christopher L. MOORE, Appellant.

No. WD 76112.

Missouri Court of Appeals, Western District.

Oct. 8, 2013.

---

Jeffrey R. Kays, Ashland, MO, for Respondent.

Jeffrey K. Basinger, Columbia, MO, for Appellant.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, and KAREN KING MITCHELL and GARY D. WITT, Judges.

KAREN KING MITCHELL, Judge.

Christopher L. Moore (Father) appeals the trial court's judgment modifying custody and child support. He claims that the trial court erred in awarding sole physical custody of the parties' minor child to Amanda Thomas (Mother) because the record failed to support the trial court's finding that the modification was in the child's best interests. Father further claims that the trial court erred in ordering him to pay child support in the amount of $432.00 because the trial court's calculation of Mother's gross monthly income was not supported by substantial evidence. We affirm the judgment of the trial court, as amended by this opinion, and remand for determination of whether the presumed child support amount, as amended, was rebutted by the evidence presented at trial as being unjust or inappropriate.

**Factual and Procedural Background** [1]

Mother and Father became romantically involved in 2004, and a son (Child) was born of the relationship on May 19, 2006. The parties never married, and in September 2011, near the end of their relationship, they obtained a judgment of paternity, custody, and support (original judgment), in which the trial court incorporated their agreed-upon custodial ar-

1. "We view the evidence and all permissible inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Querry v. Querry*, 382 S.W.3d 922, 926 (Mo.App.W.D.2012).

rangement, joint parenting plan, and custodial schedule. The original judgment awarded the parties joint legal and physical custody of Child, with Mother's residence designated as Child's address for mailing and educational purposes. The custodial schedule provided for alternating physical custody on a weekly basis, with each parent having custody on their respective week from 6:00 p.m. Sunday through 6:00 p.m. the following Sunday. The custodial schedule also provided for alternating holidays. The original judgment ordered the parties to equally share the costs of necessary childcare, medical insurance, uninsured medical expenses, extraordinary medical expenses, and any other extraordinary expenses incurred on behalf of Child. Neither party was ordered to pay child support.

Pursuant to the terms of the original judgment, the parties, who owned a home together at the time, agreed that Child would remain in the home and that they would take turns living there during their weeks of custody. Despite this initial agreement and the original judgment, the parties did not comply with the custodial schedule, and both Mother and Father moved out of the home shortly after the original judgment was entered. Mother filed her motion to modify the original judgment on April 10, 2012, seeking sole legal and physical custody of Child, as well as child support. Although Father spent some time with Child between September 2011 and April 2012, it was not until April, at approximately the same time that Mother filed her motion to modify, that Father decided to begin regularly exercising his alternating weeks of custody.[2] Father testified that he did not exercise his rights between September 2011 and April 2012

because Mother denied him access to Child and because his work schedule was not conducive to the custody schedule. Mother and Father offered conflicting testimony as to how many times Child had stayed overnight with Father between September 2011 and April 2012. Mother testified that Child had spent the night with Father three times during that period, but Father testified that "there [were] at least a dozen" overnight visits.

Between September 2011 and April 2012, Father had at least three different jobs and several periods of unemployment. Father testified that, during this time, it was "difficult" to have overnight visits and "next to impossible" to exercise his weekly custody rights. Father also testified that when the original judgment was entered, he "thought that it was in the best interest of [Child] ... for [Mother] to be able to get him up and have him go to school ... so [Child] stayed [with her]." Moreover, despite his claim that Mother denied him access to Child, the record reflects that Father made no attempt to enforce the original custody order until April 2012.

When the original judgment was entered, Mother was working part time at a restaurant. The following month, October 2011, Mother was hired at The Columbia Daily Tribune as a sales representative. At the time of the trial, Mother worked full time (8:00 a.m. to 5:00 p.m., Monday through Friday) at the Tribune and on Saturdays at the restaurant. Mother testified that, if Father paid his share of Child's expenses, she would no longer need to work at the restaurant.

In April 2011, Mother began taking Child to a childcare program, where a monthly payment was required to secure

2. There was evidence that Father began regularly exercising his custody rights the same week the motion was filed, and both parties testified that it may have occurred on the same day the motion was filed.

Child's spot, regardless of how frequently he attended. Although Father argued that the childcare was unnecessary when he was unemployed, he acknowledged that childcare was necessary during periods of employment and stated that he was actively searching for a job.

The cost of childcare was approximately $250.00 per month, and the cost for health insurance was $229.64 per month. In total, Father paid for one month of childcare and reimbursed Mother $273.00 for other expenses.[3] Father acknowledged that he failed to pay his share of Child's expenses.

Much of Mother and Father's trial testimony was directly conflicting. Conflicting testimony aside, it is abundantly clear that the parties have had constant and serious communication issues throughout their relationship, that their communication issues worsened after the motion to modify was filed, and that several incidents of conflict occurred in Child's presence. Moreover, due to the ongoing conflicts, both the police and the Children's Division became involved, and the Children's Division was still working with the parents at the time of trial. Communication between the parties was further complicated by Father frequently changing his phone number, going for periods of time without a working phone, and choosing not to have a working email account.

Regarding Child's extracurricular activities, Mother and Father did not agree on what he could participate in, who should purchase the required uniforms, or even whether the uniforms could be exchanged between them. This lack of agreement resulted in inconsistent attendance at extracurricular activities and duplicate uniform purchases. The parties also failed to agree on the specifics of Child's daily routine or his religious upbringing. Mother

and Father did agree, however, that Child should remain at his current school, where he had recently been accepted into the gifted program. At the time of the trial, Mother lived in Child's school district, but Father did not.

In December 2012, the trial court issued a modified judgment, finding that there was a substantial and continuing change in circumstances and that a modification was necessary to serve Child's best interests. The trial court awarded Mother sole legal and physical custody of Child and designated Mother's residence as Child's address for mailing and educational purposes. The court granted Father the following visitation periods:

1. Every other weekend from after school on Friday until 4:00 p.m. on Sunday when school is in session. If school is not in session, then from 5:00 p.m. on Friday until 4:00 p.m. on Sunday[;]

2. Every Wednesday from after school to 8:00 p.m. when school is in session. If school is not in session then from 5:00 p.m. Wednesday to 8:00 p.m.;

3. [Father] shall have three weeks visitation in the summer.... If [Father] does not travel out of town with [Child] during this three week visitation, [Mother] shall [be] entitled to visitation every Wednesday from 5:00 p.m. to 8:00 p.m. and every other weekend from 5:00 p.m. Friday to 4:00 p.m. Sunday. [Mother] shall have fourteen days uninterrupted parenting time with [Child] during the summer months for purposes of traveling out of town for vacation.

The modified judgment also provided that Mother and Father would alternate holi-

---

3. Father paid Mother an additional $500.00 on the day of the trial.

days. The trial court entered specific findings related to the changed circumstances [4] but not the relevant best interest factors. The trial court noted, however, that "[d]ue to the change in circumstances . . ., it is in the best interest of the minor child that [Mother] have sole legal and physical custody."

Regarding the child support calculation, the trial court imputed income to Father in the amount of $1,733.00 per month based upon its finding that Father was capable of earning $10.00 per hour and working full time. The court found that Mother earned a monthly income of $2,222.00 at the Tribune and $821.00 at the restaurant. The trial court found that Mother's restaurant job would be unnecessary if Father paid his share of Child's expenses; therefore, the court did not include Mother's restaurant income in calculating her total monthly income. The trial court rejected both parties' Form 14s and, pursuant to its own calculation, the court ordered Father to pay $432.00 in monthly child support. Father now appeals.

## Standard of Review

We will affirm the trial court's judgment unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In child custody cases, we give greater

---

4. The trial court found that the following substantial and continuing changed circumstances necessitated the modification:

 a. After this Court entered its [September 2011 judgment, Father] stopped exercising joint physical custody with the minor child, only exercising custody on very few occasions.

 b. It was not until April 10, 2012, the date [Mother] filed her Motion to Modify, that [Father] began to exercise joint physical custody on a week[-]to[-]week basis.

 c. The Court finds that [Father] had no intention of exercising joint physical custody on a week[-]to[-]week basis until he was faced with the possibility of paying child support.

 d. [Mother] and [Father] are unable to communicate with each other regarding the minor child's health, education and welfare.

 e. [Father] has had at least eight different telephone numbers since this Court's last order, and has refused to allow [Mother] to communicate with him regarding the minor child using email.

 f. The parties have been unable to agree on which extracurricular activities [Child] should be involved.

 g. [Father] has failed to cooperate in exchanging [Child's] Cub Scout uniform, baseball equipment and purchase of school supplies, resulting in the parties purchasing double of these items for [Child].

 h. Because [Father] refused to exercise joint physical custody of [Child], he has left [Mother] to pay for all [of Child's] day[-]to[-]day expenses, [which are] normally partly covered by the non-custodial parent's child support payments.

 i. [Father] has failed and refused to pay equally [Child's] necessary [childcare] expenses, [Child's] medical insurance and [Child's] uninsured medical expenses . . ., leaving [Mother] to pay these expenses.

 j. [Father] paid a total of $276.00 toward [Child's] necessary [childcare] expenses, [Child's] medical insurance and [Child's] uninsured medical expenses, and in addition, paid $500.00 toward these expenses on the day of trial in this matter.

 k. [Child] has demonstrated behavior problems at school.

 l. The parties have had multiple instances of arguing in front of [Child].

 m. The parties have called law enforcement to resolve conflicts arising out of custody exchanges.

 n. [Father] resides with his paramour who is on parole for possession of methamphetamine.

 o. [Father's] current paramour has been the source for some of the conflict between the parties.

 p. [Father] has decided to switch careers and attend school to further his goals.

 q. [Father] has worked sporadically since the Court's original judgment.

deference to the trial court "because we recognize its superior position to assess witness credibility, sincerity, character, and other intangibles that may not be discernible from the record." *Querry v. Querry*, 382 S.W.3d 922, 926 (Mo.App.W.D. 2012). As the trial court has such broad discretion in custody matters, "we will affirm its decision unless we are firmly convinced that the welfare and best interests of the children requires otherwise." *Flathers v. Flathers*, 948 S.W.2d 463, 465 (Mo.App.W.D.1997). Additionally, "[a]n award of child support is within the sound discretion of the circuit court and [we] will not substitute [our] judgment for that of the circuit court." *Russell v. Russell*, 210 S.W.3d 191, 198 (Mo. banc 2007).

## Analysis

Father raises two points on appeal. First, he claims that the trial court erred in awarding sole physical custody of Child to Mother because the award was not in Child's best interests. Second, he claims that the trial court erred in ordering him to pay $432.00 in child support because the trial court's calculation of Mother's monthly income was not supported by substantial evidence.

### I. Child Custody

■ A modification of legal or physical custody "requires a substantial change in circumstances since the prior decree, of either the child or the child's custodian, *and* modification must be in the best inter-

est of the child."[5] *Querry*, 382 S.W.3d at 927 (emphasis added). As noted, the trial court entered findings on the changed circumstances, but failed to discuss the relevant best interest factors. Although neither Mother nor Father requested written findings, in cases such as this, where the parties do not agree on the custodial arrangement, the trial court is statutorily required to include findings detailing which best interest factors it considered in its custody modification, regardless of whether they are specifically requested by either party. § 452.375.6.[6] However, "any alleged error for failing to make [the required findings] must be included in a motion to amend the judgment in order to preserve the error for appellate review." *In re Marriage of Wood*, 262 S.W.3d 267, 276 (Mo.App.S.D.2008) (citing Rule 78.07(c)). Here, Father does not raise the issue of insufficient findings on appeal, nor did he file a post-trial motion alleging error in the trial court's findings; as such, any alleged error is not preserved and is not addressed by this Court.

■ Father's first point claims only that the evidence failed to support the custody modification as being in Child's best interests. His point relied on does not challenge the trial court's finding of changed circumstances. Thus, despite Father's argument that Mother failed to demonstrate changed circumstances, we review only the issue raised in Father's point relied on.

---

5. Here, although we conclude, *infra,* that the parties maintained joint physical custody, we also note that legal custody was modified by the trial court from joint to sole. Father does not claim that the trial court erred in the modification of legal custody. Moreover, even where parties maintain a joint physical custody arrangement, a modification to the parenting time schedule requires a finding of changed circumstances; the only difference is that the changed circumstances need not be "substantial." *Russell v. Russell*, 210 S.W.3d

191, 197 (Mo. banc 2007) ("Courts should not require a 'substantial' change from the circumstances of the original judgment where the modification sought is simply a rearrangement in a joint physical custody schedule.").

6. All statutory references are to Missouri Revised Statutes 2000, as updated through the 2012 Cumulative Supplement, unless otherwise noted.

*See* Rule 84.04. And, "[w]e view the evidence and all permissible inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Querry*, 382 S.W.3d at 926. Father's argument, however, is dependent upon a review of the evidence in a light contrary to the judgment. This is a view we cannot adopt. *See id.* Rather, we review and consider the entirety of the trial court judgment on appeal.

■ Under the modified plan, Father has custody for alternating weekends throughout the year, every Wednesday evening, and three weeks during the summer. Therefore, despite the modification to the alternating weekly schedule ordered in the original judgment, he will maintain frequent and meaningful contact with Child. With this arrangement, Child will also remain in his current school district and have a consistent daily routine during the school week. There was no evidence that Mother is either an unfit parent or unable to provide appropriate care for Child. In fact, Father testified that, when the original judgment was entered, he did not exercise his rights to custody because, in part, he thought it was in Child's best interests to be with Mother.

For approximately six months after the initial judgment was entered, Father not only failed to exercise his rights to the alternating weeks of custody but also found it "difficult" and "next to impossible"

to comply with the custody schedule when he was working. This is the same custody schedule that he now argues is in Child's best interests and should remain in effect. Between September 2011 and April 2012, Father had multiple jobs with varying work schedules, as well as several periods of unemployment. At the trial, Father was still unemployed (though he claimed to be seeking new employment). Mother, on the other hand, consistently worked full time at the Tribune and part time at the restaurant while she was Child's primary caretaker. When Mother could not care for Child because of work, she arranged for outside childcare.

In light of Father and Mother's history of conflict and lack of cooperation, it was reasonable for the trial court to modify the custody schedule so as to minimize the parents' need to cooperate. Although both parties must work on eliminating conflict with each other, especially in the presence of Child, they both demonstrated that they are able to care for Child. The trial court noted that it considered all of the statutory best interest factors, despite its failure to make detailed findings, and, under the circumstances, the trial court did not err in modifying custody.[7]

■ While we find that the modification was in Child's best interests, we also note that " '[w]hen the court orders significant periods where the child is in the care

---

7. Father argued that this Court should view the present circumstances when determining whether a modification is in Child's best interests. By making this argument, Father implies that we should disregard the time period between September 2011, when the original judgment was entered, and April 2012, when Mother filed the motion to modify. Although we understand that Father would like to emphasize the fact that, since April 2012, he has been regularly exercising his custody rights, we cannot ignore the fact that he was not exercising those rights before April 2012 or the trial court's finding that Father began exercising his custody rights at approximately the same time that Mother filed her motion to modify, precisely *because* Father found himself faced with the possibility of having to pay child support. In this appeal, we have considered (and we are certain the trial court did as well) whether the modification is in Child's best interests based on both the present circumstances and the circumstances from September 2011 and April 2012.

of each parent, the award is actually one of joint physical custody, regardless of how the court characterizes it.'" *Potts v. Potts,* 303 S.W.3d 177, 185 (Mo.App.W.D.2010) (quoting *Malawey v. Malawey,* 137 S.W.3d 518, 524 (Mo.App.E.D.2004)). To be considered significant, the time awarded to the parents need not be equal; "'[t]he key consideration ... is the amount of time the child[ ] spend[s] with each parent.'" *Id.* (quoting *Malawey,* 137 S.W.3d at 524). Here, the modified plan awarded Father significant periods of custodial time; therefore, Mother and Father should be designated as joint physical custodians.[8] *See, e.g., Querry,* 382 S.W.3d at 928–29 (deeming Wednesday evenings, alternating weekends, and alternating weeks in the summer significant); *Clark v. Ingram,* 380 S.W.3d 607, 609 (Mo.App.W.D.2012) (deeming Wednesday overnights and alternating weekends significant); *In re Marriage of House,* 292 S.W.3d 478, 487–88 (Mo.App.S.D.2009) (deeming alternating weekends, alternating holidays, and one week in the summer significant); *Wood v. Wood,* 193 S.W.3d 307, 311 (Mo.App.E.D. 2006) (deeming two weekends per month, one weekday evening, certain holidays, and two to five weeks in the summer significant). "'It is not necessary to find error or to remand for correction of the decree where we can simply recognize and clarify that [Father] is a joint physical custodian.'" *Querry,* 382 S.W.3d at 929 (quoting *Potts,* 303 S.W.3d at 186). Thus, while we deny Father's first point on appeal, we amend the trial court's judgment to reflect that Mother and Father are joint physical custodians.[9]

Point I denied.

## II. Child Support

In his second point, Father claims that the trial court erred in ordering him to pay $432.00 in child support in that the evidence failed to support the trial court's calculation of Mother's monthly income as $2,222.00. Father argues that the correct calculation of Mother's gross monthly income was $3,321.00 per month, consisting of $2,500.00 from the Tribune and $821.00 from her part-time employment at the restaurant.

 "The trial court must follow a two-step procedure to determine the appropriate amount of child support." *Roberts v. Roberts,* 391 S.W.3d 921, 922 (Mo. App.W.D.2013). First, the trial court determines the presumed child support amount using the Form 14 calculation. *Id.; see also Woolridge v. Woolridge,* 915 S.W.2d 372, 378 (Mo.App.W.D.1996) ("The use of Form 14 in calculating child support is mandatory."). In making this determination, "the trial court can either accept one of the parties' Form 14 calculations or reject both parties' calculations and prepare its own Form 14 calculation." *Roberts,* 391 S.W.3d at 922. "The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record, which we recommend as the most efficient and surest way of preserving the record, or by articulating on the record how it calculated [the] amount." *Woolridge,* 915 S.W.2d at 382. The required findings necessary for review on appeal may "be done by separate written findings, findings in the judgment entry, or by oral findings on the record." *Id.*

And, although Rule 88.01 leaves it to the court to determine whether a Form 14 item should be included in a Form 14

---

8. Father raises no challenge to the trial court's award of sole legal custody to Mother.

9. All references to "visitation" in the trial court judgment should be considered "parenting time."

calculation under a given factual situation and the correct amount of the item to be included, the "formula" to be employed and the factors to be considered in calculating the presumed correct child support amount is not discretionary. *Id.* at 379.

After calculating the presumed amount, the trial court must decide, after considering all relevant factors, whether to rebut the presumed amount as unjust or inappropriate. *Roberts*, 391 S.W.3d at 922–23. "Unlike a Form 14 calculation, there is no mandatory worksheet or formula to be used in determining whether a Form 14 amount is unjust or inappropriate," and a trial court may consider non-Form 14 factors in making this determination. *Woolridge*, 915 S.W.2d at 379 (noting that in addition to the statutory factors found in section 452.340.1, debt is an example of a possible non-Form 14 factor the court might consider).

As noted, this Court reviews the trial court's award and application of the two-step procedure according to the *Murphy v. Carron* standard of review, and we review the court's decision regarding whether the presumed amount should be rebutted as unjust or inappropriate for an abuse of discretion. *Sieg v. Sieg*, 255 S.W.3d 20, 23 (Mo.App.W.D.2008). " 'We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion and will not disturb an award of child support unless the evidence is "palpably insufficient" to support it.' " *Luckeroth v. Weng*, 53 S.W.3d 603, 606 (Mo.App.W.D. 2001) (quoting *Thill v. Thill*, 26 S.W.3d 199, 207 (Mo.App.W.D.2000)).

Father's sole challenge to the trial court's child support award is directed at the calculation of Mother's monthly gross income. Father claims that Mother's monthly income from the Tribune is $2,500.00, not $2,222.00 as found by the trial court. Father also claims that the trial court erred by not including the $821.00 Mother earns from her part-time job in its calculation.[10]

Here, the trial court rejected both parties' Form 14s. The trial court did not prepare its own Form 14, but in the judgment, the court determined the monthly income· for both parties— $2,222.00 [11] for Mother and $1,733.00 for Father—as well as the monthly expenses for childcare ($256.00) and Child's health insurance ($229.00).[12] The court also noted that it considered the following child support factors in making the support determination: the financial resources of Child; the financial resources and needs of the parents; the standard of living Child is entitled to; the physical and emotional condition of Child; and Child's educational

---

10. Father does not challenge the trial court's calculation of the amount of Mother's monthly income from her part-time employment.

11. In the judgment, in addition to finding that Mother "is employed full time at The Columbia Daily Tribune as a sales account representative and earns $2,222.00 per month," the court later noted that it *"imputes* income to [Mother] in the amount of $2,222.00 per month." (emphasis added). The trial court improperly used the term "imputes" when referring to Mother's income, as income is imputed only when a party is found to be unemployed or underemployed. *Sieg v. Sieg,* 255 S.W.3d 20, 23–24 (Mo.App.W.D.2008). This error, however, is not fatal to the court's income determination in this case as there was also a finding that Mother *earned* the same amount that was "imputed" as a sales account representative for the Tribune. We simply note the language error so that misuse of the term "impute" can be avoided in the future.

12. Father does not challenge the court's findings regarding the amount of these monthly expenses.

needs. The court calculated the presumed child support amount, in accordance with section 452.340.8, Rule 88.01, and Form 14, to be $432.00 per month and found that this amount was not rebutted as unjust or inappropriate. Based on the information the court provided in the judgment, we determine that, in addition to the income amounts and expenses noted, the trial court also subtracted a federal childcare tax credit for Mother and adjusted the support payment by 10% for Father's overnights (92 to 109 overnights annually). With those factors taken into consideration, the calculation of presumed child support was $432.00, as ordered by the court.

■ Regarding Mother's income from her job at the Tribune, she first testified that her gross monthly income was "approximately $2077.56." On cross-examination, however, Mother acknowledged that, on her income statement filed with the court, she stated that she earns $2,500.00 in gross monthly income at the Tribune and $2,077.56 was listed as her net, or take-home pay. Based on Mother's testimony and the evidence submitted, we find that the trial court erred in finding that Mother earns $2,222.00 in gross monthly income at the Tribune, as that amount is not supported by substantial evidence and is against the weight of the evidence. The evidence, instead, supports a finding that Mother's gross monthly income at the Tribune was $2,500.00.

■ In addition to her full-time job, Mother worked part time at a restaurant to supplement her income.[13] However, as the trial court found, this additional income would be unnecessary if Father regularly paid his share of Child's expenses.

The comments to Form 14 specifically state that "earnings from secondary employment . . . *may* be included, in whole or in part, in 'gross income' in appropriate circumstances." Form No. 14, Child Support Calculation Worksheet, Directions, Comments for Use and Examples for Completion of Form No. 14 (emphasis added). Thus, inclusion of secondary income in the gross monthly income calculation is not required. When determining whether to include secondary employment income in its calculation, a court shall consider, among other factors, "[t]he motivation of the parent . . . in working secondary employment during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods." Form No. 14, Comment C. The trial court was free to accept Mother's testimony that she would not need this additional income if Father had paid his share of Child's expenses. Thus, the trial court did not err in excluding this amount in its calculation of Mother's gross monthly income.

Although we find the trial court's calculation of the amount of Mother's monthly gross income from her job at the Tribune to be in error, Rule 84.14 allows this Court to enter the judgment that should have been entered "in circumstances that indicate there is no further need for proceedings in the circuit court." *DeBaliviere Place Ass'n v. Veal,* 337 S.W.3d 670, 679 (Mo. banc 2011). As such, we amend the Form 14 calculation to reflect the appropriate amount of Mother's monthly gross income, $2,500.00, and we amend the judgment to reflect that the presumed child support amount is $410.00. Because of the

13. Mother testified on cross-examination that her weekly restaurant paycheck is $22.75, but she explained that this is a tip-based job and her income fluctuates depending on the month. Further evidence indicated that her gross pay at the restaurant averaged approximately $750.00 each month.

two-part procedure applicable to child support awards, we must also remand to allow the trial court to determine, based on the evidence adduced at trial, " 'whether to rebut the presumed correct child support amount [of $410.00], ... as being unjust or inappropriate after consideration of all relevant factors.' " *Roberts*, 391 S.W.3d at 922–23 (quoting *Woolridge*, 915 S.W.2d at 379). Thus, we remand for this limited purpose.[14]

Point II is denied.

## Conclusion

The trial court did not err in modifying child custody, and we amend the judgment to reflect that Mother and Father have joint physical custody of Child. The trial court also did not err in excluding Mother's income from her secondary employment at the restaurant in its calculation of her monthly gross income. The trial court erred, however, in its calculation of Mother's gross monthly income from her work at the Tribune. We therefore find that Mother's gross monthly income is $2,500.00, we amend the judgment to reflect this amount and that the presumed child support payment is now $410.00, and we remand to allow the trial court to determine whether the presumed correct child support amount of $410.00 is rebutted as being unjust or inappropriate. We affirm the judgment of the trial court in all other respects, as amended.

THOMAS H. NEWTON, Presiding Judge, and GARY D. WITT, Judge, concur.

14. Upon remand, the trial court may also consider whether Father should receive any adjustment for child support payments he has made since the judgment to the extent that the total amount paid for Child exceeds the amount he should have been paying pursuant to the remand.