

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| PATRICK KLEIN, | ) | |
| Appellant, | ) | |
| v. | ) | WD78026 |
| | ) | |
| JENNIFER KLEIN, | ) | FILED: September 29, 2015 |
| Respondent. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY
### THE HONORABLE KATHRYN E. DAVIS, JUDGE

### BEFORE DIVISION THREE: KAREN KING MITCHELL, PRESIDING JUDGE, LISA WHITE HARDWICK AND ANTHONY REX GABBERT, JUDGES

Patrick Klein ("Father") appeals from a judgment granting Jennifer Klein's ("Mother") motion for modification of child support and maintenance. Father contends the circuit court erred in: (1) finding that the child was not emancipated; (2) awarding child support retroactive to June 2013; (3) failing to order child support payments be made directly to the child; (4) calculating the amount of child support; and (5) extending maintenance payments beyond the termination date provided in the dissolution judgment. For reasons explained herein, we reverse the court's order awarding the new child support amount retroactive to June 2013, and we reverse the court's Form 14 presumed correct child support calculation.

Those issues are remanded, with directions, to the circuit court. The judgment is affirmed in all other respects.

FACTUAL AND PROCEDURAL HISTORY

Father and Mother were divorced on March 24, 2009. The parties entered into a marital settlement agreement, which the circuit court incorporated in its judgment of dissolution. The judgment awarded the parties joint physical and legal custody of their two children, Tanner and Casen, who were 16 years old and 13 years old, respectively, at the time of the dissolution. Father was required to pay $549 in child support and to maintain health insurance for both children. The judgment also required Father to pay modifiable maintenance in the amount of $951 per month until June 2013, when such maintenance "shall terminate."

On June 17, 2013, Father filed an affidavit to terminate child support, asserting that Casen was emancipated because he was not enrolled in college and was not living with Mother or Father. Mother filed a counter-motion to modify child support and maintenance, arguing that Casen was not yet emancipated and requesting that maintenance be extended. Mother's motion was filed on July 15, 2013, a month and a half after the maintenance termination date specified in the dissolution decree.

On April 16, 2014, trial was held on Father's affidavit and Mother's counter-motion to modify. The court subsequently entered its judgment finding that Casen was not emancipated and was still eligible for child support due to his enrollment in college. The court concluded that Casen completed 12 credit hours and received

2

passing grades in more than half of his classes for the Fall 2013 semester. However, because Casen failed to submit an official school document showing his enrollment prior to the Spring 2014 semester, the court abated Father's child support obligation as of January 1, 2014. The court ordered that such abatement would terminate upon Casen's compliance with the notification requirements. The court accepted Mother's Form 14 calculation of the presumed correct child support amount of $1044 per month and found that such an amount was not unjust or inappropriate. The court, therefore, denied Father's request to terminate child support and increased his support obligation to $1044 per month, retroactive to June 1, 2013.

The circuit court also found that "[s]ince the date of the judgment, [Mother]'s expenses have increased and she is unable to meet her reasonable expenses with her current income and property." Noting that the maintenance order in the original dissolution decree was modifiable, the court ordered that Father's maintenance obligation of $951 per month be extended "until further order of the court." Father appeals.

### STANDARD OF REVIEW

In reviewing this court-tried case, we must affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ricklefs v. Ricklefs*, 111 S.W.3d 541, 543 (Mo. App. 2003). We view the evidence and reasonable inferences in the light most favorable to the circuit court's decision, disregarding all contrary evidence

3

and inferences. *Hicks v. Quednow*, 197 S.W.3d 217, 219 (Mo. App. 2006). "We defer to the trial court's decision even if the evidence could support a different conclusion." *In re Kreutzer*, 50 S.W.3d 334, 337 (Mo. App. 2001).

**ANALYSIS**

***Emancipation of Casen***

In Point I, Father contends the court erred in finding that Casen was not emancipated. Specifically, Father argues that Casen did not meet the requirements of Section 452.340.5, RSMo Cum. Supp. 2013,[1] because he was not enrolled in 12 credit hours of courses as of October 1, 2013. Further, Father argues that because Casen failed two courses during the fall semester, he did not "complete" 12 credit hours. Finally, Father asserts that Casen failed to provide the official school documents necessary for continued child support.

Under Section 452.340.5, a child is not deemed emancipated for purposes of child support if he or she, although reaching the age of 18, is continuously enrolled in an institution of higher education until the age of 21. Section 452.340.5 provides, in pertinent part:

> If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school . . . and so long as the child enrolls for and completes at least twelve hours of credit each semester . . . and achieves grades sufficient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-one, whichever first occurs.

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

4

Casen originally enrolled in 16 credit hours at Maple Woods Community College. He withdrew from two courses at some point before October 1. On October 1, Casen was still awaiting a meeting with a guidance counselor to obtain additional classes. Thus, as of October 1, 2013, Casen was enrolled in only nine credit hours. By October 4, 2013, Casen was able to enroll in additional courses to replenish his workload to 12 credit hours.

Father argues that, because Casen was enrolled in only nine, rather than 12, credit hours on the day of October 1, 2013, he was emancipated under Section 452.340.5. Father points out that the statute requires that Casen be enrolled in and complete 12 credit hours each semester to remain eligible. Thus, Father argues that Casen was required to be enrolled in at least 12 credit hours as of October 1, 2013.

We do not read Section 452.340.5 as a mandate that the number of credit hours in which the child is enrolled on a single day is dispositive on the issue of whether the child is entitled to continued support. Under the plain language of the statute, the first requirement for receiving continued support is that the child be "enrolled in an institution of vocational or higher education not later than October first." § 452.340.5. While this language clearly requires that the child be enrolled in the institution by October 1, it does not require that the child be enrolled *in 12 credit hours* as of that date. Instead, Section 452.340.5 provides only that the child complete 12 credit hours *during the semester* as a prerequisite to *remaining* eligible for continued support.

5

Father also argues that, by failing two courses in the first semester, Casen did not "complete" 12 credit hours and therefore, did not remain eligible for continued support. To support this argument, Father cites *Lombardo v. Lombardo*, 35 S.W.3d 386, 389 (Mo. App. 2000), which held that the "student must receive credit for at least twelve hours" of courses in order to remain eligible for support. Since *Lombardo*, however, the legislature has amended the statute, adding the following language:

> When enrolled in at least twelve credit hours, *if the child receives failing grades in half or more of his or her courseload in any one semester*, payment of child support *may* be terminated and shall not be eligible for reinstatement.

§ 452.340.5 (emphasis added). Pursuant to this amendment, the court may, at its discretion, terminate the child support obligation for a child who is failing half or more of his classes. A child's failure to receive a passing grade in a course no longer results in emancipation as a matter of law. *Cox v. Cox*, 384 S.W.3d 298, 303 (Mo. App. 2012).

Casen took six classes in his first semester, which amounted to 12 hours of credit. Of those six classes, Casen received passing grades in four of them. As a result, Casen received passing grades in eight credit hours out of the 12 total hours in which he was enrolled. Thus, Casen passed more than half of his Fall 2013 semester classes. "[W]here a child receives a failing grade in a course, provided the child does not fail half or more of his or her classes, the child is deemed to

6

satisfy the requirements of § 452.340.5." *Paden v. Kerns*, 318 S.W.3d 304, 307 (Mo. App. 2010).

Finally, Father asserts that Casen's failure to provide official documents from the school for the Spring 2014 semester required the court to terminate his child support obligation. Father fails to recognize the court's discretion in this regard. Although Section 452.340.5 requires the child to provide each parent with documentation of grades, credits, and coursework at the beginning of each semester, the statute specifically states that "child support *may* terminate" if the documents are not provided. (Emphasis added.) Termination of child support is not required. Therefore, the court did not err in abating, rather than terminating, Father's child support obligation for the Spring 2014 semester. Point I is denied.

### *Retroactivity of Child Support*

In Point II, Father contends the circuit court erred in making the new child support award retroactive to June 1, 2013. He argues that, because Mother filed her cross-motion to modify child support on July 15, 2013, and Mother was the prevailing party, the court was permitted to order child support retroactive only to that date. *See In re Marriage of McDaniel*, 419 S.W.3d 828, 836 (Mo. App. 2013) (stating that "[w]hen the parties file cross-motions to modify and the prevailing party filed the later motion," the court may award child support retroactive only to the date of the filing of the prevailing motion). Mother concedes this point. Accordingly, Point II is granted. We reverse the portion of the judgment awarding the new child support amount retroactive to June 1, 2013, and remand to the

7

circuit court to enter a judgment ordering it retroactive to July 15, 2013. On remand, the court may determine whether Father is entitled to an adjustment for overpayment due to the erroneous retroactivity date. *See Thomas v. Moore*, 410 S.W.3d 748, 760 n.14 (Mo. App. 2013).

**Payment of Support Directly to Casen**

In Point III, Father contends the court erred in refusing to order that child support payments be made directly to Casen. Father argues that, because he did not believe that Casen was still residing with Mother, and because Casen needed to learn financial responsibility, the court should have allowed him to make payments directly to Casen.

If a child is enrolled in a post-secondary institution, "the child or parent obligated to pay support may petition the court to amend the order to direct the obligated parent to make the payments directly to the child." § 452.340.5. The court is not *required*, however, to order that such payments be made directly to the child. Indeed, the "court has broad discretion and flexibility in fashioning child support payments." *Heutel v. Heutel*, 803 S.W.2d 84, 89 (Mo. App. 1990).

While Father preferred to make payments directly to Casen to teach him money management skills, Mother testified that Casen was struggling with maturity issues and was poor at managing money. Furthermore, although Father believed that Casen was no longer living with Mother, Mother testified that Casen lived in her home on a full-time basis while he attended community college. The circuit court was free to accept Mother's testimony over Father's, and we defer to

8

its decision to do so. The court did not abuse its discretion in ordering child support payments be made to Mother rather than directly to Casen. *See Mason v. Mason*, 873 S.W.2d 631, 637 (Mo. App. 1994) (finding no error in the circuit court's ordering that payments be made to custodial parent where evidence indicated child was poor at managing money and was still living with custodial parent). Point III is denied.

***Child Support Calculation***

In Point IV, Father contends the court erred in failing to give him credit in the child support calculation for the $120 he pays per month for Casen's health insurance. Mother concedes that the court should have included Father's payment of Casen's health insurance premiums in the Form 14 calculation, and she agrees that the monthly amount is $120. Therefore, Point IV is granted. We reverse the child support award and remand for the circuit court to recalculate the Form 14 to include Father's payment of $120 per month for Casen's health insurance. After recalculating the Form 14, the court should then determine whether to rebut that amount as unjust or inappropriate based on a consideration of all relevant factors. *Thomas*, 410 S.W.3d at 759–60. Additionally, on remand, the court may consider whether Father is entitled to an adjustment for any child support payments he has made since the judgment to the extent that the total amount paid exceeds the amount he should have been paying. *Id*. at 760 n.14.

***Credit for Payments Made on Behalf of Casen***

9

In Point V, Father contends the circuit court erred in failing to give him credit for certain expenditures he made on behalf of Casen after he stopped paying his child support obligation in July 2013. Father asserts that he should have received credit for the monthly amounts he paid for Casen's health insurance, car insurance, and cell phone, as well as for payments he made directly to Casen, after that time. Father argues that the amount he paid for these "necessities" exceeded his child support obligation and that the circumstances required that such direct payments be made, as Casen was not living with Mother.

"A custodial parent has the sole authority to determine how to spend child support paid by the noncustodial parent." *Meyer v. Block*, 123 S.W.3d 316, 326 (Mo. App. 2003). Furthermore, the noncustodial parent cannot "dictate the method or manner of payment." *Id*. Thus, "[i]f the noncustodial parent pays all or a portion of the child support in a manner inconsistent with the dissolution decree, the noncustodial parent is typically not entitled to any credit for such payments." *Id*. Equity may allow the credit for nonconforming payments "when those payments were made under the compulsion of the circumstances." *Id*. "Compulsion of the circumstances arises when the custodial parent abandons the child or agrees to a change in custody." *Ballard v. Hendricks*, 877 S.W.2d 232, 235 (Mo. App. 1994). "This court has generally held, however, that the assent or acquiescence of a custodial parent to the nonconforming payment must be established." *Meyer*, 123 S.W.3d at 326.

10

In this case, there was no evidence indicating a compulsion of circumstances requiring Father to make nonconforming child support payments. Mother neither abandoned Casen nor agreed to a change in custody. While Father testified that he believed Casen no longer resided with Mother, the court was free to disbelieve this testimony, particularly in light of Mother's contrary statements that Casen continued to live in her home. There was also no evidence that Mother either assented or acquiesced to the nonconforming payments. The mere fact that Mother may have been aware of such payments is insufficient to prove that she consented to those payments in lieu of child support. *See McBride v. McBride*, 708 S.W.2d 738, 739 (Mo. App. 1986) (mother's awareness of father's monthly car payments on children's behalf did not establish that she acquiesced to the payments in lieu of support). Point V is denied.

***Extension of Maintenance***

In Point VI, Father contends the circuit court lacked authority to extend the maintenance award. Specifically, Father argues that, because the original maintenance order terminated in June 2013, and because Mother did not file a motion to modify maintenance until July 2013, there was no existing order for the court to modify. Alternatively, Father argues that Mother failed to show a substantial and continuing change sufficient to support modification.

Section 452.335.3 provides:

The maintenance order shall state if it is modifiable or nonmodifiable. The court may order maintenance which includes a termination date. Unless the maintenance order which includes a termination date is

11

nonmodifiable, the court may order the maintenance decreased, increased, terminated, extended, or otherwise modified *based upon a substantial and continuing change of circumstances which occurred prior to the termination date of the original order*.

(Emphasis added.) This provision contains no requirement that a motion to modify be filed before the termination date for maintenance. Instead, the plain language of the statute allows maintenance to be modified as long as the substantial and continuing *change* supporting modification occurs before the termination date. Thus, the circuit court had the statutory authority to extend the maintenance order if the change occurred before the termination date contained in the original dissolution decree.[2]

The circuit court may modify maintenance "only if the moving party proves by detailed evidence a change in circumstances so substantial and continuing as to make the terms of the original maintenance order unreasonable." *Batka v. Batka*, 171 S.W.3d 757, 759 (Mo. App. 2005). While it was Mother's burden to prove changed circumstances, "we presume that the trial court's judgment is valid and the appellant has the burden of demonstrating that the judgment is incorrect." *Lee v. Gornbein*, 124 S.W.3d 52, 56 (Mo. App. 2004).

Father argues that Mother failed to show a substantial and continuing change sufficient to support modification. He asserts that Mother's failure to show what her expenses were at the time of the original decree precluded her from

---

[2] Father also asserts that the court lacked authority to modify maintenance because the parties' separation agreement unambiguously terminated maintenance in June 2013. We reject this argument because the separation agreement also expressly stated that "[m]aintenance is modifiable."

12

proving that her expenses have increased since the dissolution. He also argues that Mother's Income and Expense Statement indicated that she paid $2200 per month toward her debts, yet the minimum required payment listed for her credit card debt was only a little over $500. Therefore, he alleges that, because she pays more than is required toward her debt, she cannot show that continued maintenance is necessary to meet her reasonable needs.

In its judgment, the court found that, "Since the date of the judgment, [Mother]'s expenses have increased and she is unable to meet her reasonable expenses with her current income and property." The evidence supporting this finding was Mother's testimony that she is in a substantially worse financial position than she was at the time of the initial dissolution decree and that her expenses and debts have increased significantly. She testified that she works multiple jobs to try to meet her financial obligations. Mother also testified that she is in danger of being unable to meet her mortgage payments without continued maintenance. Although Mother admitted she was able to pay $2200 per month toward her debt, she testified that she was only able to do so when her part-time jewelry business had a brief period of success. At the time of trial, Mother said she was paying only the minimum required payments toward her credit card debt. The court was free to accept Mother's testimony regarding her increase in expenses and her inability to meet those expenses, and her testimony was sufficient to support the court's modification of the maintenance award. Point VI is denied.

13

## CONCLUSION

We reverse the court's order awarding the new child support amount retroactive to June 2013, and we reverse the court's Form 14 presumed correct child support calculation.  Those issues are remanded, with directions, to the circuit court.  The judgment is affirmed in all other respects.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.